**IOWA SUPREME COURT BOARD OF PROFESSIONAL ETHICS AND CONDUCT, Complainant,**

v.

**Stacie L. LETT, Respondent.**

**No. 03–1646.**

Supreme Court of Iowa.

Jan. 22, 2004.

Norman G. Bastemeyer and Charles L. Harrington, Des Moines, for complainant.

Stacie L. Lett, Des Moines, pro se.

STREIT, Justice.

The Grievance Commission recommends we permanently revoke Stacie L. Lett's license to practice law in Iowa. The Commission determined Lett repeatedly violated mandatory provisions of the Iowa Code of Professional Responsibility for Lawyers. The Commission found Lett stole client funds, neglected duties owed to her clients, lied to her clients to cover up her misdeeds, failed to promptly return client property upon withdrawal, disregarded court orders, and failed to cooperate with the investigation of the Iowa Supreme Court Board of Professional Ethics and Conduct. We agree with the findings and recommendation of the Commission and revoke Lett's license to practice law.

## I. Prior Proceedings

In 1998, Stacie L. Lett was licensed to practice law in Iowa. Since then, she has spent much of her time in private practice in Des Moines.

In November 2002, Lett pled guilty to theft in the second degree, a class "D" felony, for stealing approximately $5000 in client funds. *See* Iowa Code §§ 714.1(2), .2(2) (2001) (theft in excess of $1000 but not more than $10,000 is theft in the second degree, a class "D" felony). In January 2003, the district court deferred judgment and placed Lett on two years' probation.

Upon learning of Lett's plea, we ordered Lett to appear and show cause why her license to practice law should not temporarily be suspended. *See* Iowa Ct. R. 35.14(1) ("Upon receipt by the supreme court of satisfactory evidence that an attorney had pled guilty to . . . a crime which would be grounds for license suspension or revocation, such attorney may be temporarily suspended from the practice of law by the supreme court . . . the attorney concerned shall be notified . . . that the attorney has a right to appear before one or more justices of the supreme court . . . and show cause why such suspension should not take place."). Following a hearing in February 2003, we temporarily suspended Lett's license to practice law. *See id.*

In March 2003, the Iowa Supreme Court Board of Professional Ethics and Conduct filed a formal complaint against Lett. The complaint alleged Lett had repeatedly violated several mandatory provisions of the Iowa Code of Professional Responsibility for Lawyers, including the theft to which Lett pled guilty in the district court.

Lett did not answer the Board's complaint. Lett's failure to answer constituted an admission of the allegations in the complaint. Iowa Ct. R. 36.7; *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Reese,* 657 N.W.2d 457, 458 (Iowa 2003). Lett also failed to respond to the Board's written requests for admissions. Lett's failure to respond to the Board's requests for admissions was also an admission of the allegations therein. Iowa Ct. R. 35.6; Iowa R. Civ. P. 1.510; *Reese,* 657 N.W.2d at 459.

In June 2003, the Grievance Commission held a hearing regarding Lett's conduct. At the hearing, Lett did not attempt to deny her actions. Lett's counsel stated:

> [W]e're not denying the allegations. We're not going to attempt to mitigate those allegations. We're not going to try to justify the allegations. What we would like to do . . . is to try to explain the circumstances surrounding the allegations with the same desire as opposing counsel . . . for an appropriate sanction. Ms. Lett fully expects her license to be, at a minimum, suspended, if not disbarred.

Lett pointed out circumstances in her life which, she contended, warranted a three-year suspension of her license to practice law in Iowa. To this end, Lett testified at the hearing and offered into evidence six letters in which she belatedly attempted to respond to some of the Board's notices of complaint.

The Grievance Commission found Lett had repeatedly violated mandatory provisions of the Iowa Code of Professional Responsibility for Lawyers. In particular, the Commission found Lett stole client funds, neglected duties owed to her clients, lied to her clients to cover up her misdeeds, failed to promptly return client property upon withdrawal, disregarded court orders, and failed to cooperate with the investigation of the Iowa Supreme Court Board of Professional Ethics and

Conduct. The Commission recommended we permanently revoke Lett's license.

Lett does not appeal the report of the Grievance Commission. Our de novo review is nonetheless required. Iowa Ct. R. 35.10(1).

## II. Scope of Review

■ Where "no appeal is taken or application for permission to appeal is filed . . . [we] proceed to review de novo the record made before the commission and determine the matter without oral argument or further notice to the parties." Iowa Ct. R. 35.10(1). "We give respectful consideration to the Grievance Commission's findings and recommendations, but are not bound by them." *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Vinyard,* 656 N.W.2d 127, 130–31 (Iowa 2003).

■ The Board must prove attorney misconduct by a convincing preponderance of the evidence. *Id.* at 131. This burden is less than proof beyond a reasonable doubt, but more than the preponderance standard required in the usual civil case. *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. D'Angelo,* 619 N.W.2d 333, 337 (Iowa 2000). Once misconduct is proven, we "may impose a lesser or greater sanction than the discipline recommended by the grievance commission." Iowa Ct. R. 35.10(1); *see, e.g., Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Bell,* 650 N.W.2d 648, 650 (Iowa 2002) (revoking license even though Commission recommended five-year suspension).

## III. Factual Findings

Based upon Lett's admissions and the evidence presented to the Grievance Commission, we make the following factual findings:

## A. The Steim–Tudor Transaction

In March 2002, Barry and Denise Steim hired Lett to prepare a contract for the sale of their house to Scott Tudor. The parties agreed Tudor would take possession on May 1, 2002. Lett told the Steims the contract would be completed before this date.

Janelle Jacobsen, Tudor's ex-wife, gave Lett a check for $5150. Of this sum, $5000 was given in trust to Lett as a down payment for the house; the remaining $150 would be applied to Lett's fee once she completed the sale. Lett told the Steims she would hold the $5150 in her trust account, in order to pay necessary expenses for the sale on their behalf.

Lett never prepared the contract. Instead, she removed the Steims' money from the trust account and kept it in a jar in her house. Lett claimed she stole the Steims' money to pay for her burial expenses. Lett reasoned she needed the money because if she decided to commit suicide her parents would not have enough money to bury her.

As the closing date approached, the Steims repeatedly attempted to contact Lett, asking her to apprise them of the status of the contract and, eventually, to return their abstract. For the most part, Lett ignored the Steims' requests. When Lett did respond to the Steims, she lied about the reason for the delay. The closing date passed.

The Steims filed a complaint with the Iowa Supreme Court Board of Professional Ethics and Conduct. The Steims also called the police. To draw up the contract, the Steims had to hire another attorney.

Lett pled guilty to theft in the second degree, a class "D" felony. *See* Iowa Code §§ 714.1(2), .2(2). The district court deferred judgment and placed Lett on two years' probation, ordered her to pay resti-

tution, and mandated she undergo "a Gambling and Psychological Evaluation."

## B. The Smith–Cleveland Transaction

In 2002, Miriam Cleveland asked Lett to help her purchase a mobile home from Jason Smith. Cleveland gave Lett two checks totaling $25,300 for the purchase of the home. Of this sum, Lett agreed to hold $24,900 in trust for Smith and the remaining $400 as her fee, which she would collect once she completed the sale. Lett said she would finish the transaction within a few days.

Lett did not complete the closing as promised. Instead, Lett stole $13,300 of the funds entrusted to her. Lett testified she "in large part" gambled the money away.

Cleveland and Smith made dozens of unsuccessful attempts to contact Lett. They eventually filed complaints with the Board and called the police.

Lett returned $12,000 (which never left her trust account) to Smith, but did not make restitution for the $13,300 she stole. Lett claims she could not make restitution because Smith moved and did not leave his forwarding address. Lett has not been criminally charged for stealing from Smith.

## C. Other Client Matters

Four other clients encountered Lett. Jeffrey Enos hired Lett to defend him in a lawsuit. Lett did very little work on Enos' behalf, failed to keep Enos informed about his case, and disobeyed the district court's discovery orders. The court ultimately entered judgment against Enos in the amount of $34,946.46 plus interest and court costs. Enos did not learn about his

trial or the judgment against him until months later. Lett kept $600 Enos advanced to her, but failed to account for its use.

Debra Kissell, Lett's next-door neighbor, hired Lett to handle her divorce. Kissell gave Lett a $900 advance, and entrusted her with several important documents. Lett neglected to file Kissell's dissolution in a timely manner and repeatedly ignored Kissell's phone calls. When Kissell terminated Lett's representation, Lett failed to refund the advance, provide an accounting, or return the documents. Lett treated Raymond and Stephanie Estes, who had asked Lett to investigate a dispute with their mortgagee, in a similar fashion.

Lett also neglected to bring a modification of dissolution action on behalf of Eugene Scott. Lett kept her advance but failed to provide an accounting.

As previously indicated, Lett failed to respond in a timely manner to multiple notices of complaint from the Board of Professional Ethics and Conduct, as well as its requests for admissions.[1]

## III. Ethical Violations

The Grievance Commission found the Board sufficiently proved Lett violated nine distinct disciplinary rules. The disciplinary rules are mandatory provisions of our code of ethics, the Iowa Code of Professional Responsibility for Lawyers. *See* Iowa Code of Prof'l Responsibility at Preliminary Statement ("The Disciplinary Rules ... are mandatory in character."). The Commission determined Lett violated the Iowa Code of Professional Responsibility for Lawyers in eight respects: (1) Lett stole funds entrusted to her by her clients,

1. In addition to complaints regarding matters set forth in the body of this opinion, Lett failed to respond to a notice regarding a complaint filed by her former partner, Laurie

Ristau. The facts which led to the Ristau's complaint, however, were not part of the Board's formal complaint.

in violation of DR 1–102(A)(3) ("A lawyer shall not ... [e]ngage in illegal conduct involving moral turpitude"), DR 1–102(A)(4) ("A lawyer shall not ... [e]ngage in conduct involving dishonesty, fraud, deceit, or misrepresentation"), and DR 1–102(A)(6) ("A lawyer shall not ... [e]ngage in any other conduct that adversely reflects on the fitness to practice law"); (2) Lett did not return retainers to her clients after abandoning their cases, in violation of DR 1–102(A)(4) and DR 9–102(B)(3) ("A lawyer shall ... [m]aintain complete records of all funds, securities, and other properties of a client coming into the possession of the lawyer and render appropriate accounts regarding them"), as well as DR 9–102(B)(4) ("A lawyer shall ... [p]romptly pay or deliver to the client as requested by a client the funds, securities, or other properties in the possession of the lawyer which the client is entitled to receive"); (3) Lett failed to provide accountings to clients, in violation of DR 9–102(B)(3); (4) Lett neglected client matters, in violation of DR 6–102(A)(3) ("A lawyer shall not ... [n]eglect a client's legal matter") and DR 7–101(A) (A lawyer must seek the lawful objectives of a client, carry out her contract of employment, and shall not prejudice or damage a client); (5) Lett failed to appear for scheduled court proceedings, in violation of DR 1–102(A)(5) ("A lawyer shall not ... engage in conduct that is prejudicial to the administration of justice"); (6) Lett failed to promptly return all client papers and property, in violation of DR 2–110(A)(2) ("[A] lawyer shall not withdraw from employment until reasonable steps have been taken to avoid foreseeable prejudice to the rights of the client"); (7) Lett disregarded court orders, in violation of DR 7–106(A) ("A lawyer shall not disregard ... a standing rule of a tribunal or a ruling of a tribunal made in the course of a proceeding") and DR 1–102(A)(5); and (8) Lett failed to cooperate with the Board's investigation, in violation of DR 1–102(A)(5) and DR 1–102(A)(6).

In light of the factual findings set forth above, we agree with the Commission: the Board has proved, by a convincing preponderance of the evidence, Lett violated each of the foregoing disciplinary rules. In several instances, the Board established Lett had violated a given disciplinary rule more than once. We now turn to determine the appropriate sanction.

## IV. Sanction

The Grievance Commission recommended we permanently revoke Lett's license to practice law in Iowa. Although Lett does not appeal the Commission's decision, at her hearing she requested a three-year suspension. We agree with the Commission and revoke Lett's license.

In reaching our decision, we recognize the appropriate sanction must be determined in light of the particular circumstances of each case. *Iowa Supreme Ct. Bd. of Prof'l Ethics Conduct v. Schatz,* 595 N.W.2d 794, 796 (Iowa 1999). "Factors which help guide our determination include the 'nature of the alleged violations, the need for deterrence, protection of the public, maintenance of the reputation of the bar as a whole, and the respondent's fitness to continue in the practice of law.'" *Id.* (quoting *Comm. on Prof'l Ethics Conduct v. Blomker,* 379 N.W.2d 19, 21 (Iowa 1985)).

Lett's actions clearly warrant revocation of her license. Although not convicted, having received a deferred judgment, Lett stole client funds. "There is no place in our profession for lawyers who convert funds entrusted to them. It is almost axiomatic that we revoke licenses of lawyers who do so." *Comm. on Prof'l Ethics Conduct v. Ottesen,* 525 N.W.2d 865, 866 (Iowa 1994); *see Iowa Supreme*

*Ct. Bd. of Prof'l Ethics Conduct v. Allen,* 586 N.W.2d 383, 389–90 (Iowa 1998) (cataloguing cases where we have revoked an attorney's license for theft of entrusted funds). *But see D'Angelo,* 619 N.W.2d at 338–39 (only a lengthy suspension warranted where attorney did not intentionally misappropriate funds). Moreover, Lett's thefts were sizeable and could have resulted in *felony* convictions for conduct involving dishonesty. *See* Iowa Code 714.2 (theft of $13,000 and $5000 are class "C" and "D" felonies, respectively); *id.* 602.10122 (providing that attorney's conviction of a felony is a sufficient cause for revocation or suspension); *Iowa Supreme Ct. Bd. of Prof'l Ethics Conduct v. Sylvester,* 548 N.W.2d 144, 147 (Iowa 1996) (holding attorney's "conviction of a felony [was] conclusive evidence that the ultimate form of discipline [i.e. revocation of the attorneys license] must be imposed"). The mere fact Lett received a deferred judgment in a corresponding criminal case is, in itself, irrelevant to our analysis in an attorney disciplinary proceeding. *See Comm. on Prof'l Ethics Conduct v. Cody,* 412 N.W.2d 637, 640–41 (Iowa 1987) (standards for determining appropriateness of a sanction in an attorney discipline proceeding and the punishment in a criminal case are different). A record of a conviction in this case would amount to nothing more than evidentiary surplusage. Through her admissions, plea of guilty, and the testimonial and documentary evidence presented against her at the hearing, the Board has conclusively established Lett stole large sums of entrusted funds from her clients. Lett's thefts, of course, are not confined to her outright misappropriation of client funds. Failing to return an unearned retainer is also theft. *See Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Winkel,* 599 N.W.2d 456, 459 (Iowa 1999) ("A lawyer who takes a fee before it is earned effectively misappropriates the client's

funds."). Examining Lett's conduct, one is reminded of President Abraham Lincoln's admonition regarding advance fees:

> As a general rule, never take your whole fee in advance, nor any more than a small retainer. When fully paid beforehand, you are more than a common mortal if you can feel the same interest in the case as if something was still in prospect for you as well as for your client.

Frederick Trevor Hill, Lincoln the Lawyer 242 (1906).

 In addition to stealing entrusted client funds, Lett repeatedly violated other provisions of the Iowa Code of Professional Responsibility for Lawyers. Multiple violations of our disciplinary rules ... call for enhanced disciplinary sanctions. *Iowa Supreme Ct. Bd. of Prof'l Ethics Conduct v. Lesyshen,* 585 N.W.2d 281, 288 (Iowa 1998); *see Iowa Supreme Ct. Bd. of Prof'l Ethics Conduct v. Leon,* 602 N.W.2d 336, 339 (Iowa 1999) ("a pattern of misconduct leads us to conclude that future misconduct is likely" and revocation necessary to protect the public). Not only did Lett fail to cooperate with the Board's investigation, she neglected duties owed to her clients, lied to her clients to cover up her misdeeds, failed to promptly return client property upon withdrawal, and disregarded court orders. Lett inflicted grave harm upon her clients—particularly Enos, whom Lett effectively deprived of a legal defense. *Comm. on Prof'l Ethics Conduct v. Freed,* 341 N.W.2d 757, 759 (Iowa 1983) (neglect of duties to client is like "a surgeon who, without transferring responsibility, drops his scalpel and abandons his patient in the course of an operation"). Further exacerbating the critical condition in which she put or left her clients, Lett has made little effort to reimburse her victims. *See Comm. on Prof'l Ethics Conduct v. Martin,* 375 N.W.2d 235, 238–39 (Iowa 1985)

(failure to make restitution an aggravating factor).

It is also troubling that Lett has continually shifted the blame for her misdeeds upon others. *See Iowa Supreme Ct. Bd. of Prof'l Ethics Conduct v. Fleming*, 602 N.W.2d 340, 342 (Iowa 1999) ("attempt to shift the blame elsewhere and ignore inquiries by the board reflects poorly on [a lawyer's] fitness to practice law"). Although Lett apologized for her actions, she shifted blame to other members of the bar, the Board's process server, the Iowa Lawyers Assistance Program of the Iowa State Bar Association, and even the terrorist attacks of September 11, 2001. The Commission concluded "the main theme that ran through her testimony and written responses . . . is that others are to blame for her predicament." We agree with this assessment. Revocation is the proper sanction.

We are mindful of several factors which might otherwise tend to mitigate the sanction we impose: Lett's alleged health problems, personal tragedies, financial difficulties, gambling addiction, relative inexperience in the practice of law, as well as a lack of a record of prior discipline. Nevertheless, given the severity of Lett's transgressions, we conclude Lett is not a suitable candidate for rehabilitation and reinstatement of her license to practice law.

In a letter to the Board, Lett insisted revocation would result in "let[ting] this tragedy be for nothing." We disagree. Revoking Lett's license will deter others, protect the public, and uphold the reputation of the bar as a whole. *See Schatz*, 595 N.W.2d at 796 (citing *Blomker*, 379 N.W.2d at 21). To permit Lett to practice law again would simply risk too much. For in reaching our decision, we recognize

Lawyers, as guardians of the law, play a vital role in the preservation of society. The fulfillment of this role requires an understanding by lawyers of their relationship with and function in our legal system. A consequent obligation of lawyers is to maintain the highest standards of ethical conduct . . . in the last analysis it is the desire for the respect and confidence of the members of the profession and of the society which the profession serves that should provide to a lawyer the incentive for the highest possible degree of ethical conduct. The possible loss of that respect and confidence is the ultimate sanction. So long as its practitioners are guided by these principles, the law will continue to be a noble profession. This is its greatness and its strength, which permits of no compromise.

Iowa Code of Prof'l Responsibility at Preamble. Lett's actions have not only harmed others, but also diminished the public's respect for the legal profession. To permit Lett to practice again would risk further harm to the public and the profession. This risk, and the attendant costs, prove too great. We must, therefore, revoke Stacie L. Lett's license to practice law. Costs are taxed to Lett pursuant to Iowa Court Rule 35.25(1).

**LICENSE REVOKED.**

All justices concur except LAVORATO, C.J., and WIGGINS, J., who take no part.