# IN THE SUPREME COURT OF IOWA

No. 09–1343

Filed April 16, 2010

**IOWA SUPREME COURT ATTORNEY DISCIPLINARY BOARD,**

Complainant,

vs.

**WILLIAM SHAW CARPENTER,**

Respondent.

On review of the report of the Grievance Commission of the Supreme Court of Iowa.

Grievance commission recommends attorney's license be suspended for thirty months. **ATTORNEY ORDERED TO CEASE AND DESIST PRACTICING LAW IN IOWA.**

Charles L. Harrington and David J. Grace, Des Moines, for complainant.

James Quilty of Crawford & Quilty Law Firm, Des Moines, and William Shaw Carpenter, pro se, for respondent.

**TERNUS, Chief Justice.**

The complainant, Iowa Supreme Court Attorney Disciplinary Board, filed charges against the respondent, William Shaw Carpenter, alleging numerous violations of the Iowa Rules of Professional Conduct. Carpenter is licensed to practice in Minnesota, but not in Iowa. Carpenter practices in Iowa under our rules that permit lawyers not licensed in Iowa to practice in federal law matters venued in this state. Iowa R. Prof'l Conduct 32:5.5(d)(2). The disciplinary complaint against Carpenter is based on his representation of clients in seventeen separate federal immigration matters, his two misdemeanor convictions, and his trust account violations.

After a hearing panel denied Carpenter's motion to dismiss, the parties entered into a stipulation with regard to Carpenter's ethical violations and a recommended sanction of a suspension for thirty months, as well as a requirement that any application for reinstatement include an evaluation by a licensed health care professional verifying Carpenter's fitness to practice law. Upon the parties' request, a hearing panel of the Grievance Commission of the Supreme Court of Iowa convened without the parties' participation. Subsequent to the panel's discussion of the issues, the panel adopted the parties' stipulation and recommended sanction. The panel also recommended the return of all client funds taken without a proper accounting.

We agree that Carpenter engaged in the charged misconduct. Therefore, we order Carpenter to cease and desist from all practice of law in Iowa indefinitely with no opportunity to request that this order be lifted for a period of not less than two years. We also order Carpenter to submit, with any request to lift this order, an evaluation by a licensed health care professional that he is fit to practice law.

## I.  Standard of Review.

Our review of attorney disciplinary proceedings is de novo.  Iowa Ct. R. 35.10(1); *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Gottschalk*, 729 N.W.2d 812, 815 (Iowa 2007).  The commission's findings and recommendations are given respectful consideration, but we are not bound by them.  *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Isaacson*, 750 N.W.2d 104, 106 (Iowa 2008).  The board has the burden of proving attorney misconduct by a convincing preponderance of the evidence. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Conrad*, 723 N.W.2d 791, 792 (Iowa 2006).

> "This burden is less than proof beyond a reasonable doubt, but more than the preponderance standard required in the usual civil case. Once misconduct is proven, we 'may impose a lesser or greater sanction than the discipline recommended by the grievance commission.' "

*Id.* (quoting *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Lett*, 674 N.W.2d 139, 142 (Iowa 2004) (citation omitted)).

## II.  Jurisdiction.

Although licensed to practice law in Minnesota, Carpenter is not licensed to practice law in Iowa.  From 2005 to 2007, Carpenter maintained offices in Iowa and provided legal services to persons in Iowa on federal immigration matters under Iowa Rule of Professional Conduct 32:5.5(d)(2), which provides:

> A lawyer admitted in another United States jurisdiction, and not disbarred or suspended from practice in any jurisdiction, may provide legal services in this jurisdiction that . . . are services that the lawyer is authorized to provide by federal law or other law of this jurisdiction.[1]

---

[1]Federal law provides that a member in good standing of the bar of the highest court of any state, who is not under suspension or otherwise restricted in his or her practice of law, may practice before the Federal Immigration Court.  *See* 8 C.F.R. §§ 1001.1(f), 1292.1(a)(1) (2009).

Since October 18, 2007, Carpenter has been prohibited from all practice of law in Iowa due to his disability related to depression.[2] With regard to his disability suspension, we determined we had jurisdiction to prohibit Carpenter's practice under Iowa Rules of Professional Conduct 32:5.5(d)(2) and 32:8.5(a). Comment 19 to rule 32:5.5(d)(2) provides:

> A lawyer who practices law in this jurisdiction pursuant to paragraph (c) or (d) or otherwise is subject to the disciplinary authority of this jurisdiction. *See* rule 32:8.5(a).

Rule 32:8.5(a) provides:

> (a) Disciplinary Authority. A lawyer admitted to practice in Iowa is subject to the disciplinary authority of Iowa, regardless of where the lawyer's conduct occurs. A lawyer not admitted in Iowa is also subject to the disciplinary authority of Iowa if the lawyer provides or offers to provide any legal services in Iowa. A lawyer may be subject to the disciplinary authority of both Iowa and another jurisdiction for the same conduct.

Comment 1 to rule 32:8.5(a) provides in pertinent part:

> It is longstanding law that the conduct of a lawyer admitted to practice in Iowa is subject to the disciplinary authority of Iowa. Extension of the disciplinary authority of Iowa to other lawyers who provide or offer to provide legal services in Iowa is for the protection of the citizens of Iowa.

These same provisions give us authority to prohibit Carpenter's practice in Iowa on the basis of professional misconduct. Our jurisdiction to discipline attorneys practicing in Iowa under rule 32:5.5(d)(2) rests on our responsibility to protect the citizens of our state from unethical conduct of attorneys who provide services in Iowa.

---

[2]Since February 2008, Carpenter also has been suspended from practicing before the Board of Immigration Appeals, the Immigration Courts, and the Department of Homeland Security. In September 2008, the Minnesota Supreme Court transferred Carpenter's Minnesota law license to disability inactive status.

### III. Factual Background and Prior Proceedings.

As previously noted, the respondent is admitted to practice law in the State of Minnesota. His Minnesota license has been on "disability inactive status" since September 2008. He is not admitted to practice law in Iowa; however, from 2005 through 2007, he maintained law offices in Iowa for the purpose of providing legal services on immigration matters to persons in Iowa.

On January 7, 2009, the board filed its initial complaint against Carpenter that contained seventeen separate counts: fifteen related to his handling of fifteen different federal immigration matters; one related to his convictions for operating while intoxicated (OWI), second offense, and driving with a suspended license; and one related to trust account violations. The complaint was subsequently amended to include two additional counts relating to immigration matters.

After respondent's motion to dismiss was rejected, the parties filed a stipulation regarding the ethical violations and recommended sanction. Specifically, the respondent stipulated that, on March 29, 2007, he was convicted of an aggravated misdemeanor of OWI, second offense, in violation of Iowa Code section 321J.2 (2007), and on May 23, 2007, he was convicted of a serious misdemeanor of driving while his license was suspended in violation of Iowa Code section 321J.21. The parties stipulated that Carpenter's traffic convictions violated Iowa Rules of Professional Conduct 32:8.4(a) (violating a rule of professional conduct), 32:8.4(b) (committing a criminal act that reflects adversely on the lawyer's fitness as a lawyer), and 32:8.4(d) (engaging in conduct that is prejudicial to the administration of justice).

In addition to his convictions for traffic offenses, Carpenter's alleged ethical violations involved his representation of seventeen

separate clients—Hector Hernandez, Maria Martinez, Amber Jara-Cruz, Carmen Ahidee Urrutia-Espino, Joel Villasenor, Antonia and Martin Moreno, Claudia Michelle Aguilar, Juan Gonzalez, Juan Hurtado, Ibis Melendrez Ruano, Jose Corado, Rosa Quintana, Oscar Liberato and Sara Mejicanos, Sammie Hall, Michelle Wilson, Tu Ngo, and Carolina Ibanez Galicia. His misconduct included trust account violations. The parties stipulated that, with regard to these matters, Carpenter violated Iowa Court Rule 45.7 (requiring lawyer to deposit advance fees from a client into a trust account and allowing withdrawal of such payments only as the fee is earned) and Iowa Rules of Professional Conduct 32:1.3 (requiring lawyer to act with reasonable diligence and promptness in representing a client); 32:1.4 (requiring lawyer to promptly communicate with a client); 32:1.15(a), (c), (d), (f) (requiring lawyer to deposit unearned fees into a client trust account, to account to client regarding earned fees, to promptly deliver to client any funds the client is entitled to receive, to promptly render a full accounting, and to abide by the rules governing trust accounts contained in Iowa Court Rules ch. 45); 32:1.16(d) (requiring lawyer to take steps to protect client's interests upon termination of representation, including returning or forwarding files and refunding fees); 32:8.1(b) (requiring lawyer to respond to the board's demand for information); and 32:8.4(d) (engaging in conduct that is prejudicial to the administration of justice).

As detailed in the parties' stipulation, with regard to all seventeen separate immigration matters, Carpenter failed to deposit unearned fees in a client trust account and withdrew funds without a proper accounting to the client as to the services provided. With regard to the Hernandez, Martinez, Jara-Cruz, Hurtado, Ruano, Corado, Quintana, Liberato/Mejicanos, Hall, Wilson, Ngo, and Galicia matters, the parties

stipulated that Carpenter "failed to take all reasonable steps practicable to protect the client's interests upon termination of representation." With regard to the Martinez, Jara-Cruz, Hurtado, Quintana, Liberato/Mejicanos, Hall, Wilson, Ngo, and Galicia matters, the parties stipulated that Carpenter "was not prompt or diligent with his communications with his clients." Finally, with regard to the Galicia matter, the parties stipulated that Carpenter failed to respond to two notices he received from the board regarding the client's complaint.

The parties' stipulation also noted mitigating circumstances, including Carpenter's temporary disability due to depression, for which he has sought treatment, and his cooperation with the board. The parties' stipulation recommended that Carpenter be suspended for thirty months and that any application for reinstatement be accompanied by an evaluation from a licensed health care professional of Carpenter's fitness to practice law.

Pursuant to the parties' motion, the complaint was submitted to a hearing panel based upon the stipulation and without the submission of any additional evidence. On September 14, 2009, the panel submitted its findings of fact, conclusions of law, and recommendations, adopting the parties' stipulation of facts and recommended sanction. The panel also recommended that all client funds taken without a proper accounting be refunded to each client.

**IV. Ethical Violations.**

**A. Neglect and Failure to Communicate.** Under our rules prohibiting neglect, an attorney must advance and protect his clients' interests. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Earley*, 774 N.W.2d 301, 307 (Iowa 2009) [*Earley II*]. " '[A]n attorney [must] attend to matters entrusted to his care and . . . do so in a reasonably timely manner.' "

*Iowa Supreme Ct. Att'y Disciplinary Bd. v. Ramey*, 746 N.W.2d 50, 54 (Iowa 2008) (quoting *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Dunahoo*, 730 N.W.2d 202, 205 (Iowa 2007)). Neglect warranting discipline "involves 'indifference and a consistent failure to perform those obligations that a lawyer has assumed, or a conscious disregard for the responsibilities a lawyer owes to a client.' " *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Kirlin*, 741 N.W.2d 813, 817 (Iowa 2007) (quoting *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Moorman*, 683 N.W.2d 549, 551 (Iowa 2004)). Carpenter neglected his clients' legal matters and failed to keep his clients informed about their cases. In doing so, he violated Iowa Rules of Professional Conduct 32:1.3, 32:1.4, 32:1.16(d), and 32:8.4(d). *Earley II*, 774 N.W.2d at 307.

**B. Trust Account Violations.** Carpenter violated several ethical rules when he received advance fee retainers and failed to properly deposit the fees in a client trust account and failed to properly account for the fees. *See* Iowa Rs. Prof'l Conduct 32:1.4; 32:1.15; 32:1.16(d); Iowa Ct. R. 45.7; *Earley II*, 774 N.W.2d at 307–08; *see also Iowa Supreme Ct. Att'y Disciplinary Bd. v. Plumb*, 766 N.W.2d 626, 631–32 (Iowa 2009) [*Plumb II*] (finding similar ethical violations under the Iowa Code of Professional Responsibility for Lawyers for failure to deposit and account for advance fees); *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Earley*, 729 N.W.2d 437, 443 (Iowa 2007) [*Earley I*] (same).

**C. Failure to Respond to Board's Inquiries.** Carpenter violated rule 32:8.1(b) in the Galicia matter when he failed to respond to the board's inquiries. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Dull*, 713 N.W.2d 199, 205 (Iowa 2006) (holding failure to respond to board inquiry is an ethical violation).

**D. Conviction of Traffic Offenses.** Carpenter violated Iowa Rule of Professional Conduct 32:8.4(a), (b), and (d) when he was convicted of an aggravated misdemeanor OWI, second offense, and a serious misdemeanor of driving with a suspended license. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Johnson*, 774 N.W.2d 496, 499 (Iowa 2009) (holding conviction of OWI offense violates rule 32:8.4(a), (b), (d)); *see also Iowa Supreme Ct. Att'y Disciplinary Bd. v. Weaver*, 750 N.W.2d 71, 79 (Iowa 2008) (holding attorney's OWI conviction evinced conduct adversely reflecting on fitness to practice law in violation of Iowa Code of Professional Responsibility for Lawyers DR 1–102(A)(6)); *Dull*, 713 N.W.2d at 204 (same); *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Ruth*, 636 N.W.2d 86, 88 (Iowa 2001) (same).

**V. Sanctions.**

**A. Equitable Powers.** In cases in which this court disciplines an attorney, our rules permit the suspension or revocation of the attorney's license, as well as additional or alternative sanctions such as reprimands, restitution, payment of costs, practice limitations, appointment of a trustee or receiver "and other measures consistent with the purposes of attorney discipline." *See* Iowa Ct. R. 35.9; *see also* Iowa Ct. R. 35.10(2). We do not have a rule that specifies sanctions peculiar to an attorney practicing in Iowa without an Iowa law license.

With regard to violations that typically warrant sanctions not directly affecting an attorney's licensure, such as reprimands and restitution, it is possible to impose the same sanctions on non-Iowa licensed lawyers as would be imposed on attorneys with an Iowa license. *See, e.g., Ky. Bar Ass'n v. Shane*, 553 S.W.2d 467, 467–68 (Ky. 1977) (holding attorney licensed in another jurisdiction was subject to the discipline deemed appropriate by Kentucky court, including public

reprimand for communicating with party known to be represented by a lawyer). In contrast, when a non-Iowa licensed attorney commits misconduct that typically warrants a sanction directly affecting licensure, such as suspension or revocation, such sanctions are not feasible because there is no Iowa law license to suspend or revoke. Nevertheless, like our sister courts, we conclude our authority to discipline non-Iowa licensed attorneys includes the ability to fashion practice limitations through our injunctive and equitable powers that are equivalent to license suspension, disbarment, or other sanctions related to an attorney's license. *See, e.g., In re Towne,* 929 A.2d 774, 781–82 (Del. 2007) (ordering nonlicensed attorney to cease and desist from all practice of law in Delaware and excluding attorney from admission to the bar as injunctive relief similar to disbarment); *Att'y Grievance Comm'n v. Kimmel,* 955 A.2d 269, 295 (Md. 2008) (ordering attorneys who were not licensed to practice law in Maryland be indefinitely "suspended," which, for purposes of attorneys not licensed in Maryland, included exclusion from any privilege allowed nonadmitted attorneys associated with the practice of law within the state, with the right to apply for reinstatement after ninety days); *In re Discipline of Droz,* 160 P.3d 881, 885 (Nev. 2007) (recognizing its limitations on discipline of nonlicensed attorney, court concluded enjoining attorney from practicing law in Nevada or appearing in Nevada court was appropriate sanction). This authority is clearly necessary for the protection of Iowa citizens.

**B. Appropriate Sanction.** In applying our equitable powers, we first examine our prior cases involving similar violations committed by Iowa-licensed lawyers. An examination of these cases will provide a basis for translating the appropriate sanction into equivalent injunctive relief.

There is no standard sanction for a particular type of misconduct, and though prior cases can be instructive, we ultimately determine an appropriate sanction based on the particular circumstances of each case. *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Plumb*, 589 N.W.2d 746, 748–49 (Iowa 1999) [*Plumb I*]. When fashioning a sanction, we examine several factors, including "the nature of the violations, the need for deterrence, protection of the public, maintenance of the reputation of the Bar as a whole, and the violator's fitness to continue to practice law." *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Ramey*, 639 N.W.2d 243, 245 (Iowa 2002); *accord Iowa Supreme Ct. Att'y Disciplinary Bd. v. Marks*, 759 N.W.2d 328, 332 (Iowa 2009). We also examine both mitigating and aggravating circumstances. *Earley II*, 774 N.W.2d at 308. Significant aggravating factors for punishment include " 'the existence of multiple instances of neglect, past disciplinary problems, and other companion violations.' " *Marks*, 759 N.W.2d at 332 (quoting *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Lesyshen*, 712 N.W.2d 101, 106 (Iowa 2006)).

When neglect is the principal violation, discipline usually ranges from a public reprimand to a six-month suspension. *Dull*, 713 N.W.2d at 206. When multiple instances of neglect are involved and combine with other violations or cause significant harm to the clients, we have imposed a longer period of suspension. *Id.* For example, in *Iowa Supreme Court Attorney Disciplinary Board v. Maxwell*, the attorney neglected three client matters, two of which involved allowing the statute of limitations to run. 705 N.W.2d 477, 478–79 (Iowa 2005). Based upon the number of instances of neglect, the resulting harm, and the attorney's present unfitness to engage in the practice of law due to mental health issues, we imposed a one-year suspension. *Maxwell*, 705 N.W.2d at 480. Likewise,

in *Moorman*, we held the attorney's multiple acts of pervasive neglect resulting in great harm to his clients, coupled with his offer to engage in fraudulent conduct, supported a two-year suspension. 683 N.W.2d at 552–53.

With regard to convictions of criminal offenses, an attorney's license to practice law may be revoked or suspended depending on the severity of the offense and any aggravating or mitigating factors. *See Johnson*, 774 N.W.2d at 499–500 (discussing cases and stating that, with conviction of an OWI felony, license may be revoked or suspended); *Weaver*, 750 N.W.2d at 79, 92 (holding that second-offense OWI and other violations warranted suspension of three months); *Thompson*, 595 N.W.2d at 135–36 (discussing criminal assault cases with sanctions ranging from three to fourteen months and imposing a suspension of two months). In a disciplinary case involving a misdemeanor public intoxication conviction, extensive neglect and the mishandling of client trust accounts, we imposed an eighteen-month suspension. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Kadenge*, 706 N.W.2d 403, 405, 409 (Iowa 2005).

When dealing with client trust account violations, our sanctions have ranged from a public reprimand when the violation was relatively minor and isolated, *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Piazza*, 756 N.W.2d 690, 700 (Iowa 2008), to license suspension when the violation involved poor office management and neglect, *Earley I*, 729 N.W.2d at 443, to license revocation when the violation amounted to misappropriation of client funds, *Earley II*, 774 N.W.2d at 309. Given the parties' stipulation, we are not dealing with a single incident nor are we dealing with a case of misappropriation. Therefore, the suspension cases are most helpful in determining the ultimate sanction to impose in this

case. Cases involving suspension for client trust account violations range from two months in less serious cases, *Plumb I*, 589 N.W.2d at 749, to eighteen months in very severe cases when the violations combine with multiple instances of neglect and other ethical violations, *Plumb II*, 766 N.W.2d at 635.

We note that the parties have stipulated that Carpenter's illness of depression and his treatment for that illness constitute mitigating circumstances. While such illnesses do not excuse misconduct, they can be mitigating factors and can influence our approach to discipline. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Curtis*, 749 N.W.2d 694, 703 (Iowa 2008) (holding depression a mitigating circumstance in disciplinary action resulting in one-year suspension for neglect, client trust account violations, and dishonesty to client); *Iowa Supreme Ct. Att'y Disciplinary Bd. v. McCann*, 712 N.W.2d 89, 96 (Iowa 2006) (holding severe depression and anxiety constituted mitigating circumstances in disciplinary action resulting in two-year suspension for multiple acts of misconduct, including neglect, misrepresentation, and client trust account violations). We consider Carpenter's illness and treatment to be mitigating circumstances and have taken them into account in imposing a sanction.

The hearing panel adopted the parties' recommendation of a thirty-month suspension. We believe Carpenter's misconduct in seventeen client matters, including neglect, failure to communicate, and failure to safeguard his clients' interests upon termination of representation, in addition to his trust account violations and conviction of two traffic offenses, would justify a two-year suspension. *See Moorman*, 683 N.W.2d at 552–53 (imposing two-year suspension for neglect and other serious misconduct in six client matters). Translating this suspension to

injunctive relief, we order the respondent to cease and desist from the practice of law in Iowa under Iowa Rule of Professional Conduct 32:5.5(d)(2) or any other law indefinitely with no possibility that the order will be lifted for a period of not less than two years. Although the commission recommended that funds taken in violation of client trust account rules be refunded to Carpenter's clients, the parties' stipulation does not detail the amount of such funds, and no witness testimony or other evidence was taken on the matter. Due to this lack of specificity in the stipulation and absence of evidence, we are unable to determine the degree of harm caused by the respondent to his clients or the extent to which they may be entitled to a refund of the advance fees paid by them. We do, however, agree with the commission that, given Carpenter's depression, some showing of competency to practice law must be shown to have the cease-and-desist order lifted. Therefore, any request by Carpenter to return to practice in this state or any request to become licensed in this state must be accompanied by an evaluation from a licensed health care professional verifying his fitness to practice law. *See McCann*, 712 N.W.2d at 96–97 (requiring evaluation of attorney who suffered from depression and anxiety).

### VI. Disposition.

We order Carpenter to cease and desist from all legal practice in Iowa indefinitely with no possibility that the order will be lifted for a period of not less than two years. Carpenter shall provide all notifications specified in Iowa Court Rule 35.22. In addition, costs are taxed to Carpenter pursuant to Iowa Court Rule 35.26(1).

For purposes of having the cease-and-desist order lifted, as well as for all other purposes, Carpenter shall be treated as though he has been suspended. *See* Iowa Ct. R. 35.13. Upon any application to lift this

order, Carpenter shall have the burden to show he has not practiced law in Iowa during the period the order is in effect and that he meets the requirements of Iowa Court Rule 35.12. Carpenter shall also be required to submit with any such application an evaluation from a licensed health care professional stating he is fit to practice law.

**RESPONDENT ORDERED TO CEASE AND DESIST PRACTICING LAW IN IOWA.**