# IN THE SUPREME COURT OF IOWA

No. 21–1410

Submitted February 22, 2022—Filed March 18, 2022

**IOWA SUPREME COURT ATTORNEY DISCIPLINARY BOARD,**

Complainant,

vs.

**BRIEN P. O'BRIEN,**

Respondent.

On review of the report of the Iowa Supreme Court Grievance Commission.

In an attorney disciplinary action, the grievance commission recommends revocation of the respondent's license to practice law based on violations of our attorney ethics rules. **LICENSE SUSPENDED.**

McDermott, J., delivered the opinion of the court, in which all justices joined.

Tara van Brederode and Lawrence F. Dempsey, IV, Des Moines, for complainant.

Brien P. O'Brien, Sioux City, pro se.

**McDERMOTT, Justice.**

This attorney disciplinary matter presents the curious, but unfortunately not unheard of, circumstance of a lawyer who inexplicably "ghosts" his client in the middle of representation. Clients in these unfortunate situations, often anxious and always confused by the lawyer's repeated failures to respond, eventually figure out that they've been abandoned, but sometimes not before they've suffered harm because of the lawyer's misconduct. This type of behavior, of course, defies our ethics rules that impose clear-cut duties on lawyers to act with diligence, to keep clients reasonably informed, and to respond to clients' reasonable requests for information about their legal matters.

In this case, the Iowa Supreme Court Attorney Disciplinary Board charged the lawyer with neglect and other violations of the Iowa Rules of Professional Conduct and recommended an eighteen-month suspension. The grievance commission concluded that the lawyer committed each of the charged violations and recommended that we revoke the lawyer's license. On review, we find all the same violations of our ethics rules and impose a three-year suspension.

**I. Background Facts and Proceedings.**

Brien O'Brien was admitted to practice law in Nebraska in 1991. He received his license to practice law in Iowa five years later and set up practice in Sioux City. The Nebraska Supreme Court disbarred him in 2002 for violating Nebraska's trust account rules and for making false statements to its disciplinary authorities during the investigation into those violations. We imposed reciprocal discipline in 2003 based on the Nebraska disciplinary action,

suspending his license to practice in Iowa for three years. In 2004, O'Brien was convicted of the crime of fraudulent practices in the third degree (an aggravated misdemeanor) for failing to file Iowa income tax returns. For this conviction we again suspended his license, this time for six months, to run concurrently with his ongoing three-year suspension.

In 2019, Damon Krull met with O'Brien about possible representation in a child custody case that Krull's ex-wife filed. O'Brien agreed to represent him. O'Brien required that Krull pay a $2,750 retainer, which Krull did. O'Brien soon thereafter filed an answer in the custody case on Krull's behalf and dismissed a contempt claim that Krull had filed earlier by himself against his ex-wife.

And then, as to Krull, O'Brien seems to have attempted to put on an invisibility cloak. O'Brien ceased further communications. In the ensuing months, Krull called, left messages, and eventually even started dropping in unannounced at O'Brien's office in attempts to discuss his case with O'Brien. Despite promises from O'Brien's receptionist that O'Brien would call Krull, O'Brien remained unmoved. He never returned a call, never sent an email or letter, and indeed never stepped out of his office when Krull appeared in person. As it turned out, their initial meeting would be the first, last, and only time that O'Brien would communicate with Krull.

After about four months of O'Brien's silence, Krull received a call from O'Brien's legal secretary informing him that his ex-wife's lawyer had served discovery requests. In fact, as Krull would later learn, those discovery requests had been served fifty-six days earlier, making responses to them already several

weeks past due. Krull provided the requested materials to O'Brien's secretary within three days, although he noted to the secretary that he didn't know how to respond to several of the requests. O'Brien's secretary said that O'Brien would call Krull to work through those items. No call came. Krull tried to reach O'Brien to discuss the discovery responses, but to no avail.

After several more weeks without hearing from O'Brien, Krull, on his own, accessed the online docket for his case to try to discern the status of things. He discovered that his ex-wife's lawyer had filed a motion to compel production of responses to the discovery requests. The motion noted opposing counsel's repeated unsuccessful attempts to contact O'Brien about these items, and further noted O'Brien's failure to serve initial disclosures as well. In response to one of opposing counsel's calls, O'Brien's legal secretary apparently had requested a two-week extension to provide the responses. Opposing counsel had agreed. Yet O'Brien provided no responses within the two-week extension.

The district court granted the motion to compel and ordered O'Brien to provide responses within ten days. As that deadline was drawing near without action by O'Brien, Krull filed a pro se motion requesting additional time to comply with discovery. The motion stated:

> I ask the courts for an extension on providing discovery responses and other information that has been requested. My attorney Brien O'Brien was not representing me to his best ability, and had not been communicating with me at all about my case. My phone calls would not get returned, requests to meet with him would go unanswered. The paralegal I met with in his place has been on vacation [for three months]. When I discovered all the requests for information and deadlines that had been passed, I asked for an explanation and I wasn't given one. I terminated services with Brien

O'Brien and I would like 30 days to find proper legal representation. I apologize for the inconvenience.

The district court granted Krull's request for additional time to respond to the discovery requests. The court also ordered a hearing to address potential sanctions for the failure to respond. The district court in the order noted that O'Brien had neither filed a response to the motion to compel nor a motion to withdraw as counsel in the case, and that Krull thus needed to "timely sort out his attorney issues."

Krull asked O'Brien's legal secretary to return the retainer and his client file. The secretary responded that O'Brien would first need to prepare an invoice for the services he'd rendered. But no invoice materialized. When Krull again contacted O'Brien's secretary for the refund and the file, the secretary turned over the file but no refund. O'Brien never provided Krull with any invoice or accounting. He held onto the full retainer.

Meanwhile, Krull retained a new lawyer by taking out a loan from a family member to pay the new lawyer's retainer. At the sanctions hearing, the district court acknowledged the change in counsel but noted that O'Brien had not yet sought to withdraw from the case. The court observed that "the change in counsel and proactive approach of [Krull's] new counsel of getting the issue before the court suggest that the matter will now move appropriately forward." O'Brien didn't appear at the sanctions hearing or any other hearing in the case. He never filed a motion to withdraw. The custody dispute was resolved six months later.

The Board filed a complaint against O'Brien with the Iowa Supreme Court Grievance Commission alleging multiple violations of the Iowa Rules of Professional Conduct. O'Brien filed no answer. After he failed to participate in the scheduling conference call to set his hearing date, O'Brien sent an email to the clerk of the grievance commission apologizing for not participating in the scheduling conference and advising that his calendar was "pretty clear" for a hearing. But at the scheduled hearing before the grievance commission, O'Brien never appeared. The Board presented testimony from Krull. By operation of Iowa Court Rule 36.7, the Board's unanswered charges against O'Brien were deemed admitted. The grievance commission concluded that O'Brien violated all the rules as alleged and recommended revocation of O'Brien's license.

## II. Ethical Violations.

Even when a lawyer opts not to participate in disciplinary proceedings as O'Brien has done here, we still review de novo the alleged violations and evidence to ensure that the Board has proved each allegation of misconduct by a convincing preponderance of the evidence. *See Iowa Sup. Ct. Att'y Disciplinary Bd. v. Wagner*, 768 N.W.2d 279, 281–82 (Iowa 2009) (per curiam). The same underlying conduct may violate multiple rules of professional conduct at once. *See Iowa Sup. Ct. Att'y Disciplinary Bd. v. Conroy*, 845 N.W.2d 59, 65 (Iowa 2014).

**A. Neglect.** Iowa Rule of Professional Conduct 32:1.3 requires lawyers to "act with reasonable diligence and promptness in representing a client." Neglect of a client's case obviously includes "a lawyer doing little or nothing to advance the interests of a client after agreeing to represent the client." *Iowa Sup. Ct. Bd.*

*of Prof'l Ethics & Conduct v. Moorman*, 683 N.W.2d 549, 551–52 (Iowa 2004). O'Brien failed to provide the required initial disclosures. He further failed to inform Krull about pending discovery requests until several weeks *after* the requests were past due. Krull then hustled to complete them, but to no avail: O'Brien simply sat on them, never producing completed responses to the other side. That failure prompted a motion to compel that O'Brien again never addressed. Krull personally had to make a filing for additional time to respond to the discovery requests as he sought replacement counsel. O'Brien's conduct betrays the trust that his client placed in him when he sought his assistance at the outset. O'Brien failed to act at all—never mind to act with reasonable diligence—on these duties. The Board proved a violation of this rule.

**B. Communication.** Rule 32:1.4(a)(3) requires a lawyer to "keep the client reasonably informed about the status of the matter." Iowa R. Prof'l Conduct 32:1.4(a)(3). And rule 32:1.4(a)(4) compels a lawyer to "promptly comply with reasonable requests for information." *Id.* r. 32:1.4(a)(4). O'Brien's refusal to communicate with Krull establishes an obvious failure to keep Krull reasonably informed about his case. *See Iowa Sup. Ct. Att'y Disciplinary Bd. v. Noel*, 933 N.W.2d 190, 200 (Iowa 2019). We have no basis to find anything unreasonable about Krull's many efforts to communicate with O'Brien about his case, yet O'Brien ignored all of them. *See Iowa Sup. Ct. Att'y Disciplinary Bd. v. Humphrey*, 812 N.W.2d 659, 665 (Iowa 2012). The Board proved a violation of rule 32:1.4, subsections (a)(3) and (a)(4).

**C. Fees.** Rule 32:1.5(a) prohibits a lawyer from collecting an unreasonable fee. Failing to refund unearned fees violates this rule. Iowa R. Prof'l Conduct 32:1.5(a); *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Rhinehart*, 827 N.W.2d 169, 181 (Iowa 2013). O'Brien took a retainer for $2,750. He filed an answer and a dismissal of a pro se contempt filing that Krull had made. And then he just quit, wholly and abruptly, without explanation. He never provided Krull an itemization of work performed to justify taking the entire retainer. Despite Krull's repeated requests for a refund, O'Brien refused to return any of the retainer. The limited services that O'Brien performed do not justify the fee he took. The Board proved a violation of this rule.

**D. Expediting Litigation.** Rule 32:3.2 requires a lawyer to "make reasonable efforts to expedite litigation consistent with the interests of the client." Iowa R. Prof'l Conduct 32:3.2. Failing to make necessary filings and to respond to discovery requests violates this rule. *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Kennedy*, 837 N.W.2d 659, 669 (Iowa 2013). O'Brien's failures to make initial disclosures, respond to discovery, or respond to the motion to compel establish a violation of this rule.

**E. Safekeeping Property.** Rule 32:1.15(d) requires a lawyer both to "promptly deliver" funds to which the client is entitled and, upon a client's request, to "promptly render a full accounting regarding such property." Iowa R. Prof'l Conduct 32:1.15(d). In disputes between a lawyer and a client about the amount of the fee that may be taken from an advance fee deposit, a lawyer isn't at liberty "to take personal possession of the disputed amount or to hold the

entire payment hostage to obtain an advantage over the client in resolution of the dispute." 16 Gregory C. Sisk & Mark S. Cady, *Iowa Practice Series Lawyer and Judicial Ethics* § 5:15(d) authors' cmt. § 5:15(d)(1), at 527 (2021). Failing to refund advance fee payments that haven't been earned and failing to provide an associated accounting to the client violates the rule. *Iowa Sup. Ct. Disciplinary Bd. v. Parrish*, 801 N.W.2d 580, 586–87 (Iowa 2011). O'Brien's failures to do either task in this case establishes a violation.

**F. Declining or Terminating Representation.** Rule 32:1.16(d) requires a lawyer, when terminating a representation, to take reasonable steps "to protect a client's interests," including giving reasonable notice to the client, allowing time for the client to retain other counsel, returning the client's file, returning the client's property (if the client is so entitled), and refunding any unearned advance fee payments. Iowa R. Prof'l Conduct 32:1.16(d). Failing to withdraw from a pending case, return the client's file, or refund unearned fees violates this rule. *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Ryan*, 863 N.W.2d 20, 26 (Iowa 2015). O'Brien effectively abandoned Krull shortly after accepting the case while providing no protection of Krull's interests; indeed, Krull was left to fend for himself under both the cloud of his ex-wife's pending motion to compel and the court's consideration of sanctions.

O'Brien nonetheless never bothered to seek permission to withdraw from the case as required under the rule. *See* Iowa R. Prof'l Conduct 32:1.16(c) (requiring a lawyer to "comply with applicable law requiring notice to or permission of a tribunal when terminating a representation"). Most relevant with

respect to this rule, O'Brien failed to return Krull's file (without any legal basis) despite Krull's request and failed to refund the unearned portion of the retainer. These failures put Krull in a squeeze both financially and strategically, making it more difficult for Krull to retain a new attorney and for the new lawyer to fix the problems that O'Brien created. The Board has thus proven a violation of rule 32:1.16(d).

**G. Misconduct Prejudicial to the Administration of Justice.** Rule 32:8.4(d) prohibits conduct "prejudicial to the administration of justice." Iowa R. Prof'l Conduct 32:8.4(d). While there is no "typical" conduct that prejudices the administration of justice, it includes conduct that "hamper[s] 'the efficient and proper operation of the courts,' " such as unnecessary court proceedings, delays, or dismissals. *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Vandel*, 889 N.W.2d 659, 666 (Iowa 2017) (quoting *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Templeton*, 784 N.W.2d 761, 768 (Iowa 2010)).

O'Brien's failure to respond to discovery in this case required the opposing party to file a motion to compel and for the court to hold both a hearing on the motion and a related hearing on sanctions. In *Iowa Supreme Court Attorney Disciplinary Board v. Beauvais*, 948 N.W.2d 505, 515–16 (Iowa 2020), we held that a lawyer's failure to respond to discovery requests that then required the defendants to file two motions to compel and a motion for sanctions, and for the court to hold hearings on those motions, violated rule 32:8.4(d). The Board thus proved that O'Brien's conduct similarly violated this rule.

**III. Sanction.**

"The purposes of lawyer discipline include protection of the public, the need for deterring other lawyers from similar misconduct, upholding the integrity of the legal system, and assuring the fair administration of justice." *Id.* at 516; *see also* Am. Bar Ass'n, *Annotated Standards for Imposing Lawyer Sanctions* § 1.1, at 1 (2015) [hereinafter Am. Bar. Ass'n].

We have no standard sanction for particular types of misconduct. *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Clarity*, 838 N.W.2d 648, 660 (Iowa 2013). To determine the appropriate sanction, we consider the nature of the ethical duties that the lawyer violated, the lawyer's mental state, the extent of the actual or potential injury caused by the lawyer's misconduct, and any aggravating and mitigating circumstances. *Beauvais*, 948 N.W.2d at 516; *see also* Am. Bar Ass'n § 3.0, at 113.

We give respectful consideration to the commission's findings and recommendations but may impose a greater or lesser sanction than what the commission recommends. *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Stoller*, 879 N.W.2d 199, 207 (Iowa 2016). The commission recommends a revocation of O'Brien's license to practice law. The Board, which originally recommended an eighteen-month suspension before the grievance commission, requests that we impose either a suspension or revocation.

Attorney neglect cases typically result in sanctions anywhere from a public reprimand to a six-month suspension. *Kennedy*, 837 N.W.2d at 675. But we impose more severe sanctions when neglect violations are accompanied by other

violations or aggravating factors. *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Carpenter*, 781 N.W.2d 263, 270 (Iowa 2010).

In *Iowa Supreme Court Attorney Disciplinary Board v. Cunningham*, a lawyer neglected client matters and failed to communicate with his clients, violating several of the same ethics rules as O'Brien. 812 N.W.2d 541, 550–52 (Iowa 2012). We considered as aggravating factors Cunningham's improprieties in handling client funds, failure to turn over client files, misrepresentations both to clients and officers of the court, and failure to respond to the Board's complaint or participate in the proceedings. *Id.* at 551–52. But Cunningham had no prior discipline, and ultimately received an eighteen-month suspension. *Id.* at 553.

In *Iowa Supreme Court Board of Professional Ethics & Conduct v. Honken*, a lawyer neglected client matters, made misrepresentations to the court, disregarded court orders, misrepresented the status of matters to his clients, and failed to respond to the Board's inquiries. 688 N.W.2d 812, 820 (Iowa 2004). In determining Honken's sanction (under our prior Code of Professional Responsibility for Lawyers in effect before July 2006), we stressed that his initial failures to respond to the Board's inquiries on multiple occasions warranted a more severe sanction. *Id.* at 821 ("Attorneys are expected and we demand that they cooperate with disciplinary investigations."). But we also noted Honken's lack of prior disciplinary action and his explanation connecting the various violations to his depression. *Id.* at 821–22. We imposed a two-year suspension. *Id.* at 822.

In *Iowa Supreme Court Attorney Disciplinary Board v. Johnson*, a lawyer neglected client matters, failed to communicate with clients, failed to make necessary court filings or appear at court proceedings, improperly presented an ex parte order to a court for signature, did not provide an accounting of fees or refund unearned fees, and failed to respond to the Board's demand for information. 792 N.W.2d 674, 679–82 (Iowa 2010). We found Johnson's conduct aggravated by his prior discipline, including a suspension in Illinois for charging an excessive fee and one private admonition for failing to act diligently and to keep the client informed. *Id.* at 682. Johnson also failed to respond to the complaint or mount a defense. *Id.* at 677. We suspended his license for three years. *Id.* at 683–84.

In *Iowa Supreme Court Board of Professional Ethics & Conduct v. Lett*, a lawyer neglected client matters, lied to her clients to cover up her errors, failed to promptly return client property, disregarded court orders, failed to cooperate with the Board's investigation, and stole client funds. 674 N.W.2d 139, 140 (Iowa 2004). On top of these charges, Lett also faced discipline for having recently pleaded guilty to the crime of second-degree theft (a class "D" felony) for stealing around $5,000 in client funds. *Id.* at 141. Even though she received a deferred judgment for the crime, we stated it "is almost axiomatic that we revoke licenses of lawyers who" steal from clients, and ordered revocation of her license. *Id.* at 144–45 (quoting *Comm. on Prof'l Ethics & Conduct v. Ottesen*, 525 N.W.2d 865, 866 (Iowa 1994)). By contrast, the Board did not charge or prove that O'Brien in fact *stole* client funds as had Lett.

The facts of *Iowa Supreme Court Board of Professional Ethics & Conduct v. Ramey* present perhaps the closest analog to this case. 639 N.W.2d 243, 244 (Iowa 2002). In *Ramey*, a lawyer took a $1,000 retainer to handle an estate dispute but soon neglected the matter and refused to respond to the client's repeated attempts to contact him. *Id.* The client requested a return of her file and a refund of the retainer, but Ramey gave no reply. *Id.* Ramey never refunded the retainer or provided an accounting of his services. *Id.* And, Ramey never responded to the disciplinary proceedings against him. *Id.* We found Ramey's conduct aggravated by his prior discipline. *Id.* at 245. He'd previously received one six-month suspension for failing to timely file his income tax returns, making a false statement on a client security questionnaire, and failing to respond to the inquiries by the Client Security and Attorney Disciplinary Commission, and a three-month suspension for making a false statement to the court and failing to disclose exculpatory evidence while serving as a prosecutor. *Id.* at 245–46. We also deemed aggravating Ramey's failure to respond to the disciplinary complaint against him, which we found suggested "an overall attitude of disrespect and disregard for this profession." *Id.* at 246. We imposed a three-year suspension. *Id.*

We turn to aggravating and mitigating factors. Multiple rule violations, as we have here, are an aggravating factor. *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Parrish*, 925 N.W.2d 163, 181 (Iowa 2019). Client harm is likewise an aggravating factor. *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Kingery*, 871 N.W.2d 109, 122 (Iowa 2015). Krull was clearly harmed, considering he paid O'Brien $2,750 for little

work (essentially, the preparation and filing of an answer), Krull otherwise had no work performed to advance his cause for about four months, and Krull had to get a loan to pay for a new attorney to respond to imminent court proceedings. O'Brien's lengthy experience as an attorney further serves as an aggravating factor. *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Willey*, 889 N.W.2d 647, 658 (Iowa 2017).

O'Brien's failure to participate in the commission proceedings is also an aggravating factor. *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Hearity*, 812 N.W.2d 614, 622 (Iowa 2012). Failing to cooperate with disciplinary authorities—even without any other finding of misconduct—is an ethical violation. *See* Iowa R. Prof'l Conduct 32:8.1(b). O'Brien was aware of the proceedings in this matter, having been served the complaint and having even emailed the commission's clerk after the scheduling conference to advise that his calendar looked "pretty clear." Yet he failed to respond to the Board's complaint, failed to attend the scheduling conference call, failed to respond to discovery requests that the Board served, and failed to appear at the hearing. And this isn't the only pending disciplinary matter in which O'Brien has elected not to appear; we temporarily suspended his license in June 2021 for failing to respond to the Board in a separate disciplinary matter as required under rule 35.7, thus his license currently stands suspended independent of any activity in this case.

O'Brien also has a significant disciplinary history. As noted earlier, we've suspended O'Brien's license twice in the last twenty years, and he was disbarred in Nebraska. But we also publicly reprimanded him in 2017 for violating rules

32:1.3 and 32:1.4 after he neglected a client's divorce case (resulting in the case's dismissal) and then failed to inform his client of the dismissal. That misconduct, of course, bears considerable resemblance to the misconduct in this case. And although private admonitions are not discipline, O'Brien has been privately admonished on at least seven occasions, including for neglect and client communication failures similar to the current case. "[P]rivate admonitions," as we have said, "put a lawyer on notice of deficiencies regarding ethical requirements." *Parrish*, 925 N.W.2d at 166. The nature and measure of O'Brien's disciplinary history weighs heavy.

O'Brien's failure to participate in the proceedings leaves us in the dark about mitigating factors to consider, and we have no license to speculate about them. In this respect, certainly, his silence is a potential missed opportunity to advocate for a more lenient sanction.

We determine the appropriate sanction in an attorney disciplinary matter based on the unique circumstances of the case before us and aim for consistency with our prior cases in imposing a sanction. *Iowa Sup. Ct. Att'y Disciplinary Bd. v. McGinness*, 844 N.W.2d 456, 464 (Iowa 2014); *Rhinehart*, 827 N.W.2d at 182. In considering our precedents, we find a suspension of three years the appropriate sanction in this case.

**IV. Disposition.**

We thus suspend Brien P. O'Brien's license to practice law with no possibility for reinstatement for three years. This suspension applies to all facets of the practice of law under Iowa Court Rule 34.23(3). He must comply with the

notification requirements to his clients in Iowa Court Rule 34.24. We tax the costs of this action to O'Brien under Iowa Court Rule 36.24(1).

**LICENSE SUSPENDED.**