# IN THE SUPREME COURT OF IOWA

No. 09–1445

Filed May 14, 2010

**IOWA SUPREME COURT ATTORNEY DISCIPLINARY BOARD,**

Complainant,

vs.

**ROSS G. HAUSER,**

Respondent.

On review of the report of the Grievance Commission of the Supreme Court of Iowa.

Grievance commission recommends attorney's license be suspended for nine months. **LICENSE SUSPENDED.**

Charles L. Harrington and David J. Grace, Des Moines, for complainant.

Ross G. Hauser, Cedar Rapids, pro se.

**WIGGINS, Justice.**

This matter comes before us on the report of a division of the Grievance Commission of the Supreme Court of Iowa. *See* Iowa Ct. R. 35.10. The Iowa Supreme Court Attorney Disciplinary Board brought a complaint against the respondent, Ross G. Hauser, alleging multiple violations of our ethical rules based on his neglect of a client matter. After a hearing, the grievance commission recommends we suspend Hauser's license to practice law in Iowa indefinitely with no possibility of reinstatement for nine months. Upon our de novo review, we concur the respondent violated our ethical rules and suspend his license to practice law indefinitely with no possibility of reinstatement for six months.

### I. Scope of Review.

This court reviews lawyer disciplinary proceedings de novo. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Dull*, 713 N.W.2d 199, 201 (Iowa 2006). The board's burden to prove disciplinary violations is by a convincing preponderance of the evidence. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Marks*, 759 N.W.2d 328, 330 (Iowa 2009). A convincing preponderance of the evidence is " 'less than proof beyond a reasonable doubt, but more than the preponderance standard required in the usual civil case.' " *Iowa Supreme Ct. Att'y Disciplinary Bd. v. D'Angelo*, 710 N.W.2d 226, 230 (Iowa 2006) (quoting *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Lett*, 674 N.W.2d 139, 142 (Iowa 2004)). Weight is afforded the commission's findings, but we are not bound by them. *Marks*, 759 N.W.2d at 330.

### II. Background Facts and Prior Proceedings.

Hauser has been practicing law in the state of Iowa for the past twenty-three years. During this period of time, the respondent has received a series of private admonitions, public reprimands, and

suspensions. Beginning in 1988, we have privately admonished him twice for neglect of legal matters and failure to respond to the board's inquiries. We have publicly reprimanded him three times for neglect of client matters, failure to respond to the board's inquiries, and failure to return a retainer. Finally, we have suspended his license five times between October 2005 and June 2009 for failing to comply with the rules of the Commission on Continuing Legal Education, failing to comply with the rules of the Client Security Commission, and failing to respond to the board's inquires.

This current disciplinary action involves Hauser's handling of a dissolution action. In 2005 the respondent was retained by Ricky Clemens to represent Clemens in his dissolution-of-marriage case. At the start of the representation, Clemens gave the respondent a $1000 retainer.

Initially, Hauser appeared to be providing appropriate representation to his client. He filed an answer to Clemens' now ex-wife's dissolution petition and participated in obtaining an agreement on temporary matters and a pretrial statement. On February 26, 2006, he attended a mediation session with his client and the opposing party. Thereafter, however, Hauser did not file any further pleadings or motions on Clemens' behalf. On July 5, 2006, the respondent and his client failed to appear at the scheduled trial on the dissolution petition, and the court entered a default decree. Hauser had not notified Clemens of the trial date, and Clemens was not aware the trial had occurred until he received a copy of the dissolution decree in the mail.

After receiving the decree, Clemens placed numerous telephone calls to Hauser, which Hauser failed to return. Clemens then employed another attorney who motioned the district court to get the default

judgment set aside. On August 31, 2006, the district court entered an order denying the motion. Clemens did not appeal. He subsequently filed a complaint against Hauser with the board.

On April 8, 2008, the board sent Hauser a letter, seeking information on Clemens' complaint. Hauser never responded. On May 14, 2009, the board filed a one-count complaint against Hauser, alleging the respondent violated numerous ethical rules in his representation of Clemens. Specifically, the board alleged Hauser committed ethical violations by ceasing to work on his client's case without taking the proper steps to withdraw; failing to adequately communicate with his client; failing to notify his client of the trial date; failing to attend the trial, resulting in a default judgment against his client; failing to furnish his client with a timely and complete accounting regarding earned fees; and failing to respond to a request for information from the board. These acts, the board alleged, established violations of Iowa Rules of Professional Conduct 32:1.1, requiring a lawyer to provide competent representation to a client; 32:1.3, requiring a lawyer to act with reasonable diligence and promptness in representation; 32:1.4, requiring a lawyer to keep his client reasonably informed and to promptly comply with reasonable requests for information; 32:1.15, requiring a lawyer to render a full accounting of client property in his possession; 32:1.16(d), requiring a lawyer, upon withdrawal from representation, to take appropriate steps to protect his client's interests and to return any unearned fees; 32:8.1(b), requiring a lawyer to respond to lawful demands for information from the board; and 32:8.4(a) and (d), holding it is misconduct for a lawyer to violate an ethical rule and to engage in conduct prejudicial to the administration of justice. The board also asserted Hauser violated Iowa Court Rule 45.7, which requires a lawyer

to notify his client of the withdrawal of advance fees from the client's trust account.

Hauser failed to respond to the board's complaint, and therefore, the commission deemed the allegations admitted. Hauser subsequently, however, responded to a motion to compel discovery. Based upon the information contained in Hauser's responses, the board moved to amend its complaint to include an additional allegation of trust account violations due to the respondent's failure to keep trust account records with respect to the advance fee he received from Clemens. *See* Iowa R. Prof'l Conduct 32:1.15(c) ("A lawyer shall deposit into a client trust account legal fees and expenses that have been paid in advance, to be withdrawn by the lawyer only as fees are earned or expenses incurred."); Iowa Ct. R. 45.2(2) ("A lawyer shall maintain complete records of all funds . . . of a client coming into the lawyer's possession and regularly account to the client for them."). In an order granting the board's request to amend, the commission noted its prior order holding the initial allegations admitted, but the subsequent allegation was not deemed admitted, and Hauser would be permitted to present evidence on this allegation.

A hearing was held on September 1, 2009, before a division of the commission. Because the majority of the allegations were deemed admitted, the board presented the testimony of Ricky Clemens for the limited purpose of considering the appropriate sanction. The focus, therefore, was on what harm, if any, Clemens sustained from Hauser's representation.

Clemens testified the divorce decree ordered him to pay $560.55 per month in child support.[1]  This, he contended, was based upon the child support guidelines worksheet submitted by his ex-wife, which listed Clemens' annual income at $42,785.  Clemens, however, claimed his annual income was $25,600 in 2006 and $29,100 in 2005.  No child support worksheet had been submitted to the district court by Clemens or by Hauser on Clemens' behalf, and Clemens did not present any evidence in the form of income tax returns.  Clemens also asserted his ex-wife's child support worksheet erroneously understated the monthly premium he paid for health insurance.  Based upon these alleged errors, Clemens believed his child support was set too high.

As previously noted, Clemens' attempt to get the default decree set aside was unsuccessful.  In December 2006 Clemens developed serious medical problems and was unable to work for approximately four months.  At that time, he hired a third attorney who was successful in getting his child support obligation modified as of July 2007.  Clemens believed Hauser's failure to properly represent him resulted in his receiving an excessive child support obligation, which in turn required him to hire different counsel, necessitating additional attorney fees.  In addition, Clemens testified he never received an accounting of the $1000 he paid to Hauser or any refund of any unearned fees from Hauser.

Hauser testified on his own behalf.  He acknowledged his neglect of the Clemens dissolution matter.  In his defense to the allegation of trust account violations, Hauser submitted three check stubs as evidence of his depositing Clemens' $1000 advance fee payment into his client trust

---

[1]This amount was forty dollars more per month than the temporary support set by the court.  There is no indication in the record that Clemens or Hauser objected to the temporary support award.

account and of his subsequent withdrawals of $400, $300, and $100 in payments to himself for legal services rendered. The last withdrawal was dated October 21, 2005. The records do not show, however, how Hauser earned the fees withdrawn. Upon questioning, he admitted he could not locate any trust account ledger that may have been kept in this case, but stated it was his practice to keep such a ledger.

Hauser also testified to his lengthy history of alcohol abuse. He acknowledged his alcohol use could have played a factor in prior disciplinary actions brought against him as well as this one. In the time leading up to Clemens' trial, early 2006, Hauser asserted he was not in control of his drinking. During this time, he underwent a short period of self-committal followed by extensive participation in the Alcoholics Anonymous (AA) program. Although he was able to maintain sobriety for over eighteen months, Hauser admitted he resumed drinking in January 2008. Hauser testified he has been sober since May 29, 2009, and is committed to sobriety. He has been attending AA meetings on a regular basis. He acknowledged clients would suffer if he resumed drinking and agreed the public needs to be protected from this. His failure to respond to the board's inquiries, he contended, was due to the fact that he wanted to address his alcohol abuse first before dealing with the ethics complaint. Hauser called no other witnesses, but he did try to admit three letters of support, which the commission rejected due to his failure to timely present his character evidence by sworn affidavit as required by Iowa Court Rule 36.14.

The commission concluded the respondent committed the ethical violations alleged by the board. It also concluded the respondent was currently unfit to practice law as evidenced by his ineffective representation of himself before the commission. In addition to failing to

produce complete records regarding his trust account, the commission noted Hauser failed to follow the rules to allow the admission of letters of support into evidence. Finally, in considering an appropriate sanction, the commission found mitigating as well as aggravating circumstances. It found the respondent's presently sober and candid acknowledgement of the harm caused to his client to be a mitigating factor, while his numerous prior disciplinary actions and the financial harm caused to his client were aggravating factors. Based upon these findings, the commission recommended Hauser's license to practice law be suspended indefinitely with no possibility of reinstatement for nine months. It also recommended three conditions be placed upon any application for reinstatement: (1) reimbursement of Clemens' $1000 advance fee, (2) Hauser must be evaluated by a licensed health care professional who verifies his fitness to practice law, and (3) Hauser must furnish evidence that he will associate with an experienced attorney who can monitor his practice of law to ensure Hauser is not allowing alcoholism to affect his practice.

### III. Misconduct and Ethical Violations.

We agree with the commission the board established by a convincing preponderance of the evidence Hauser neglected his client's dissolution case, failed to keep his client informed, failed to properly safeguard and appropriately withdraw his client's funds, failed to appropriately withdraw from representation, failed to properly maintain trust account records, failed to provide an accurate accounting to his client and to return unearned fees to his client, and failed to respond to the board's inquires. We also agree, with one exception, these actions establish violations of the previously enumerated ethical rules. *See* Iowa Rs. of Prof'l Conduct 32:1.3; 32:1.4; 32:1.15(c); 32:1.16(d); 32:8.1(b);

32:8.4(a), (d); Iowa Ct. Rs. 45.2(2), .7. We disagree, however, that there was clear and convincing evidence Hauser's conduct evidenced incompetence. *See* Iowa R. Prof'l Conduct 32:1.1 (requiring a lawyer to provide competent representation to a client).

To establish incompetence, the board is required to show the attorney (1) "did not possess the necessary legal knowledge and skill to complete the tasks" or (2) "had not made a competent analysis of the factual and legal elements of the problem[]." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Hoglan*, 781 N.W.2d 279, 285 (Iowa 2010). In this case, Clemens does not assert Hauser's representation, up until the time of the mediation, had been neglectful or in any other way inadequate. Thereafter, the evidence supports the conclusion that, due to his struggles with alcohol, Hauser abandoned his client and his client's case. While this is certainly evidence of serious neglect and numerous rules violations, it is not evidence of incompetence as defined under our rules. Therefore, we conclude the board failed to prove by a convincing preponderance of the evidence attorney incompetence.

### IV. Sanction.

"There is no standard sanction for a particular type of misconduct, and though prior cases can be instructive, we ultimately determine an appropriate sanction based on the particular circumstances of each case." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Carpenter*, 781 N.W.2d 263, 270 (Iowa 2010). In determining the appropriate sanction, we look to several factors, including "the nature of the violations, the need for deterrence, protection of the public, maintenance of the reputation of the Bar as a whole, and the violator's fitness to continue to practice law." *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Ramey*, 639 N.W.2d 243, 245 (Iowa 2002). We also consider mitigating and aggravating

circumstances. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Earley*, 774 N.W.2d 301, 308 (Iowa 2009).

The primary underlying ethical violation in this case is severe neglect, which eventually resulted in a total abandonment of the client. Sanctions for neglect have "typically ranged from a public reprimand to a six-month suspension." *Hoglan*, 781 N.W.2d at 286. " 'Often, the distinction between the punishment imposed depends upon the existence of multiple instances of neglect, past disciplinary problems, and other companion violations.' " *Marks*, 759 N.W.2d at 332 (quoting *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Lesyshen*, 712 N.W.2d 101, 106 (Iowa 2006)).

In this case, Hauser's neglect and abandonment of his client is compounded by the fact that Hauser made no attempt to notify Clemens of his decision to abandon representation so that Clemens could engage new counsel and avoid having a default decree entered against him. *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Ireland*, 748 N.W.2d 498, 502 (Iowa 2008) (noting abandonment prior to performing the contracted legal services resulted in failure to meet the lawful objectives of the client). These actions were clearly harmful to his client. His failure to timely return his client's paperwork or refund any unearned portion of the advance fee was also harmful to his client. *Id.*

Hauser's trust account violations are also a serious matter. *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Wagner*, 768 N.W.2d 279, 287–88 (Iowa 2009). In the past, the sanction for failure to properly deposit, to properly account for, and to appropriately return unearned advance fees has ranged from a public reprimand, *see Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Herrera*, 560 N.W.2d 592, 594–95 (Iowa 1997), to a suspension, *see Iowa Supreme Ct. Att'y Disciplinary Bd. v. Earley*,

729 N.W.2d 437, 444 (Iowa 2007) (*Earley I*), to a revocation, *see D'Angelo*, 710 N.W.2d at 236–37. In cases warranting a more severe sanction, additional infractions or other aggravating circumstances were present. *See Earley I*, 729 N.W.2d at 443–44 (neglect resulting in harm to clients, failure to return client's property, trust account violations, and prior reprimand warranted four-month suspension); *D'Angelo*, 710 N.W.2d at 236–37 (multiple and serious violations, including deliberate conversion of client funds demands revocation of lawyer's license); *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Frerichs*, 671 N.W.2d 470, 477–78 (Iowa 2003) (illegal fee contract, trust account violations, neglect of client matter, failure to cooperate with board, and prior admonition warranted four-month suspension). In this case, Hauser's abandonment of his client, his prior extensive history of ethical infractions, and his failure to timely and appropriately respond to the board's inquiries, combined with his trust account violations, warrants the imposition of a more serious sanction. *See Wagner*, 768 N.W.2d at 287.

In fashioning an appropriate sanction, we also consider any mitigating circumstances. We have repeatedly held that, "[w]hile . . . illnesses do not excuse [attorney] misconduct, they can be mitigating factors and can influence our approach to discipline." *Carpenter*, 781 N.W.2d at 271; *accord Hoglan,* 781 N.W.2d at 287; *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Curtis*, 749 N.W.2d 694, 703 (Iowa 2008). Hauser candidly admits that he is an alcoholic and further acknowledges that his clients will suffer if he resumes drinking. At the time of the hearing, the respondent testified to his current sobriety and his involvement with AA, but offered no significant testimony about any prior treatment or any evidence that he is currently seeking professional assistance with his alcoholism. The only evidence of professional

treatment is contained in Hauser's response to interrogatories, in which Hauser stated he was diagnosed in August 2009 as being alcohol dependent. To the extent Hauser acknowledges his alcoholism and has taken steps to address it through attendance at AA meetings, we consider these acts in fashioning an appropriate sanction. However, we are mindful that our primary goal is not to punish the attorney, but " 'to protect the public . . . from lawyers rendered unfit from any cause.' " *Dull*, 713 N.W.2d at 207 (quoting *Comm. on Prof'l Ethics & Conduct v. Paulos*, 410 N.W.2d 260, 261 (Iowa 1987)).

**V. Disposition.**

We have carefully considered Hauser's current violations, his prior history of ethical infractions, and his current fitness to practice law and conclude the respondent's license to practice law should be suspended indefinitely with no possibility of reinstatement for six months. Prior to any application for reinstatement, the respondent must provide this court with an evaluation by a licensed health care professional verifying his fitness to practice law. In addition, as a condition of reinstatement, Hauser must confirm that he has accounted to Clemens for the advance fees paid to him and that he has refunded any unearned fees. *See Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Kennedy*, 684 N.W.2d 256, 261 (Iowa 2004). If he is unable to provide adequate trust account documentation, we hold the full retainer must be returned.

We decline, however, to impose a commission recommendation that the respondent, prior to application for reinstatement, furnish this court with evidence that "he will associate with an experienced lawyer who can monitor his practice of law to ensure [the respondent] is not allowing his alcoholism to affect his practice and is attending to his cases." As we have stated in prior cases, " 'neither the court nor the bar

has effective machinery in place for such supervision.'" *Hoglan*, 781 N.W.2d at 287 (quoting *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Kirlin*, 741 N.W.2d 813, 819 (Iowa 2007)). Requiring the respondent to provide medical documentation of his fitness to practice law more appropriately addresses this issue.

This suspension applies to all facets of the practice of law. *See* Iowa Ct. R. 35.12. Upon any application for reinstatement, Hauser must establish that he has not practiced law during the suspension period and that he has in all ways complied with the requirements of Iowa Court Rule 35.13 and has provided the required notification of clients as outlined in Iowa Court Rule 35.22. Prior to any application for reinstatement, Hauser must provide the board with an evaluation by a licensed health care professional verifying his fitness to practice law. In addition, he must also submit documentation that he has refunded any unearned fees. Costs are taxed to Hauser pursuant to Iowa Court Rule 35.26.

**LICENSE SUSPENDED.**

All justices concur except Ternus, C.J., and Baker, J., who take no part.