# IN THE SUPREME COURT OF IOWA

No. 15–0147

Filed May 1, 2015

Amended July 2, 2015

**IOWA SUPREME COURT ATTORNEY DISCIPLINARY BOARD,**

Complainant,

vs.

**VICKI LORRAINE RYAN,**

Respondent.

On review of the report of the Grievance Commission of the Supreme Court of Iowa.

Grievance commission recommended one-year suspension of attorney's license. **LICENSE SUSPENDED.**

Charles L. Harrington and Teresa Vens, Des Moines, for complainant.

Vicki Lorraine Ryan, Charter Oak, pro se.

**APPEL, Justice.**

The Iowa Supreme Court Attorney Disciplinary Board charged attorney Vicki Lorraine Ryan with multiple violations of Iowa's disciplinary rules in connection with her representation of one client. These charges include allegations of failing to act with reasonable diligence and promptness in representing the client, failing to properly communicate with the client, failing to protect the client's interest upon termination of representation, trust account violations, and failing to communicate the scope of the representation and the basis of the fees involved in the representation.

After a hearing, a division of the Grievance Commission of the Supreme Court of Iowa concluded that Ryan committed each of the alleged violations and recommended a one-year suspension. Additionally, the commission recommended that prior to reinstatement, Ryan reimburse the client security trust fund in the amount of $431.06 and provide proof of completion of at least two hours of in-person trust account continuing legal education (CLE) and two hours of in-person ethics CLE. The commission also recommended that before reinstatement Ryan explain what happened in this matter.

Upon de novo review of the record and the commission's findings of fact, conclusions of law, and recommendations, we agree Ryan committed all the violations found by the commission. We also agree with the commission that Ryan should be required to reimburse the client security trust fund in the amount of $431.06. For the reasons expressed below, we modify the length of suspension to an indefinite period of time with no possibility of reinstatement for six months. Prior to the lifting of any suspension, Ryan must demonstrate she has complied with the request of the Client Security Commission to audit her

trust accounts. Further, Ryan must provide proof of completion of two hours of ethics CLE and two hours of trust account CLE.

## I. Factual and Procedural Background.

The disciplinary trail in this case begins in August and September of 2012 when an auditor employed by the Client Security Commission attempted to contact Ryan to arrange an audit of her trust accounts and investigate a claim against the client security trust fund, pursuant to Iowa Court Rule 39.10(3). The auditor's attempts included multiple telephone calls to each of Ryan's three telephone numbers and a personal visit to Ryan's residence. In November 2012, the Client Security Commission asked Ryan to respond to a request from a client for application of reimbursement from the client security trust fund. Ryan did not respond to these efforts to contact her. As a result, this court entered an order temporarily suspending Ryan's license until the Client Security Commission certified Ryan fully complied with its request, Ryan filed proof of compliance with Iowa Court Rule 39.8(3), and the court entered an order reinstating her license to practice. This order remains in place today.

In March 2013, JoLynn Huffman filed a complaint with the Iowa Supreme Court Attorney Disciplinary Board. In the complaint, Ms. Huffman asserted Ryan had agreed to represent her in a child custody matter, received a retainer, but had then abandoned the representation without further communication.

Ryan failed to respond to the inquiry of the Iowa Supreme Court Attorney Disciplinary Board regarding the complaint. As a result, on January 16, 2014, this court temporarily suspended Ryan's license to practice law pursuant to Iowa Court Rule 34.7(3). This temporary suspension was in addition to the prior temporary suspension of Ryan's

license for failure to respond to auditors of the Client Security Commission.

On August 27, 2014, the Board filed a disciplinary complaint against Ryan. In the complaint, the Board alleged that in December 2010, Ryan, a licensed practitioner in Holstein, Iowa, agreed to represent Ms. Huffman in a child custody matter. According to the complaint, Ryan received a retainer of $1000 to provide legal services, but there was no written fee agreement between Ryan and Ms. Huffman. The Board alleged that in January 2011, on Ms. Huffman's behalf, Ryan filed a document entitled "Petition to Establish Custody, Child Support, Visitation, Health Care and Income Tax Deductions" in Woodbury County District Court naming Michael Poppens as the respondent. The Board charged that while Ryan initially communicated with Ms. Huffman about the filing and indicated there would be follow-up with opposing counsel, thereafter, Ryan stopped communicating with Ms. Huffman. Between mid-December of 2011 and September of 2012, the Board alleged Ms. Huffman made numerous phone calls to Ryan's office but her messages went unanswered. According to the Board, Ms. Huffman learned from the City of Holstein that Ryan had left town.

On July 24, 2012, the district court issued a dismissal notice under Iowa Rule of Civil Procedure 1.944. In May of 2013, the district court issued an order allowing counsel for the opposing party to contact Ms. Huffman directly and further ordered that "Ms. Ryan shall be considered to have withdrawn from this case." The Board stated that in July 2013, Ms. Huffman hired a new attorney for the custody matter.

The Board asserted Ms. Huffman received two statements from Ryan dated January 27, 2011, and April 8, 2011, for her services totaling $598.44. According to the Board, Ryan's statements did not state an

amount of time spent on any task performed or the hourly rate charged. The Board charged that Ms. Huffman did not receive from Ryan an accounting or any reimbursement of unearned fees. According to the Board, Ms. Huffman received a partial reimbursement of her retainer from the client security trust fund.

Based upon the above allegations, the Board charged Ryan with violating the following Iowa Rules of Professional Conduct: 32:1.3 (reasonable diligence), 32:1.4(a)(3) and (4) (keeping clients reasonably informed), 32:1.16(d) (protecting client's interests in declining or terminating representation), and 32:1.15(f) (safekeeping client property and adhering to rules regarding trust accounts). The Board filed an amended complaint alleging a violation of rule 32:1.5(b) (communicating scope of representation and basis for fees and expenses).

On November 21, the commission held a hearing on the matter. Although the Board in its briefing before the commission stated that Ryan participated in a prior scheduling conference and that dates for the proceeding were arranged around Ryan's appointments at Mayo Clinic, Ryan did not appear at the hearing. Because Ryan failed to answer the original complaint, the facts in the original complaint were deemed admitted under Iowa Court Rule 36.7. As a result, the commission hearing was limited to the issue of sanction. At the hearing, the commission heard testimony from Ms. Huffman and received a handful of exhibits.

In her testimony, Ms. Huffman confirmed many of the allegations in the complaint. She also elaborated on the nature of the representation. Ms. Huffman testified that at the time she first contacted Ryan, the father of her daughter was incarcerated in federal prison out of state, but she had heard rumors he could be released for good behavior.

If released, Ms. Huffman feared the father would be able to simply pick their daughter up and leave. Ms. Huffman thus wanted a court order clarifying the custody situation regarding her daughter. At the time she hired Ryan, Ms. Huffman testified she was "scared," "extremely worried," and "freaking out." Among other things, Ms. Huffman stated she restricted contact between her daughter and her daughter's paternal grandmother as a result of her fears of what might happen if her daughter's father were released.

Ms. Huffman further testified she made more than twenty-five phone calls to Ryan's office over a period of several months, first leaving messages with staff, then on voicemail, but Ryan did not return her calls. Eventually, Ms. Huffman testified she could not even leave a message, as Ryan's voicemail box was full. She then stated she visited Ryan's law office, only to find it locked.

Documentary evidence introduced at the hearing provides further details. The documents show the billing statements and trust account balances in Ms. Huffman's matter were inconsistent and that while the balance of the retainer was stated as $431.06, the balance, assuming the billed amounts were earned, should have been $401.56. The documents also showed the client security trust fund paid $431.06 to Ms. Huffman, the amount Ryan's documents stated remained in her trust account.

The commission found the facts as alleged in the complaint. It further found Ms. Huffman's testimony credible and found additional facts as supported by her testimony and admitted exhibits.

The commission recommended a one-year suspension of Ryan's license to practice law. The commission also recommended that Ryan "provide the reason(s) for her failure to complete the client matter at issue here, and her failure to participate in the disciplinary process, and

provide proof that any conditions contributing to such failure have been ameliorated" as a condition of reinstatement of her license. Finally, the commission recommended that Ryan reimburse the client security trust fund and complete two hours of in-person trust account CLE and two hours of in-person ethics CLE.

## II. Standard of Review.

"We review factual findings of the commission de novo." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Moothart*, 860 N.W.2d 598, 602 (Iowa 2015). "We give respectful consideration to the findings of the commission, especially when considering credibility of witnesses, but are not bound by them." *Id.*; *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Van Ginkel*, 809 N.W.2d 96, 101 (Iowa 2012).

The Board's burden for each charge is proof by a convincing preponderance of the evidence. *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Evans*, 537 N.W.2d 783, 784 (Iowa 1995). "This burden is higher than the burden in most civil cases, but lower than in a criminal prosecution." *Van Ginkel*, 809 N.W.2d at 102. It is also less stringent than the clear and convincing evidence standard, which is the highest standard of civil proof. *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Ronwin*, 557 N.W.2d 515, 517 (Iowa 1996) (per curiam).

## III. Discussion of Merits.

**A. Factual Findings.** Because of Ryan's failure to respond to the allegations in the complaint, the allegations were deemed admitted under Iowa Court Rule 36.7. In addition, the Board found the unchallenged testimony of Ms. Huffman to be credible. We find it credible as well. We thus find the facts as alleged by the Board in its complaint and as elaborated upon in the testimony of Ms. Huffman before the commission and supported by the exhibits admitted into evidence at the hearing.

**B. Rule 32:1.3 (Reasonable Diligence).**  Rule 32:1.3 states, "A lawyer shall act with reasonable diligence and promptness in representing a client."  Iowa R. Prof'l Conduct 32:1.3.  Additionally, one comment to the rule notes that "[u]nless the [attorney–client] relationship is terminated as provided [under our rules], a lawyer should carry through to conclusion all matters undertaken for a client."  *Id.* cmt. 4.

In the present case, Ryan received a $1000 retainer from the client, filed a petition for the client, provided a copy of the petition to the client, and informed the client that she would be following up with opposing counsel in the near future.  Ryan then left town and failed to withdraw or even contact Ms. Huffman.  Ultimately, Ms. Huffman was required to obtain the assistance of other counsel.

This case resembles *Iowa Supreme Court Board of Professional Ethics & Conduct v. Ramey*, 639 N.W.2d 243, 244 (Iowa 2002).  In *Ramey*, an attorney, after receiving a $1000 retainer and stating that he would take appropriate action, seems to have left his practice.  *Id.*  We found the attorney violated the precursor of rule 32:1.3 by failing to carry out his responsibilities as an attorney to his client.  *Id.* at 244–45; *see also Iowa Supreme Ct. Att'y Disciplinary Bd. v. Ireland*, 748 N.W.2d 498, 502 (Iowa 2008) (per curiam) (finding attorney violated precursor to rule 32:1.3 by failing to perform the legal work he had contracted to do).

Both Ryan and the attorney in *Ramey* failed to contact their client after receiving funds and taking initial steps to protect the client's interest.  *See Ramey*, 639 N.W.2d at 244.  Like in *Ramey*, Ryan failed to carry out the client's matter to conclusion.  *See id.*  By failing to conclude the matter or appropriately terminate the attorney–client relationship, the Board has proven by a convincing preponderance of the evidence that Ryan violated rule 32:1.3.

**C. Rule 32:1.4(a)(3) and (4) (Attorney–Client Communication).**

Rule 32:1.4(a) states, "A lawyer shall . . . keep the client reasonably informed about the status of the matter." Iowa R. Prof'l Conduct 32:1.4(a)(3); *see also id.* r. 32:1.4 cmt. 4 (noting "[c]lient telephone calls should be promptly returned or acknowledged"). Further, the rule requires a lawyer to "promptly comply with reasonable requests for information." *Id.* r. 32:1.4(a)(4).

An attorney violates rule 32:1.4 "when an attorney neglects to keep a client informed about the status of the case or does not respond to a client's attempts to contact the attorney about the case." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Nelson*, 838 N.W.2d 528, 537 (Iowa 2013); *see also Iowa Supreme Ct. Att'y Disciplinary Bd. v. McCarthy*, 814 N.W.2d 596, 606 (Iowa 2012) (finding attorney violated rule 32:1.4 when he disappeared during his representation of a client after sending a draft pleading); *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Johnson*, 792 N.W.2d 674, 678 (Iowa 2010) (finding a lawyer who failed to return his client's telephone calls and requests for information violated rule 32:1.4 by failing to keep his client reasonably informed).

We explored the contours of rule 32:1.4(a)(3) and (4) in *Nelson*. In *Nelson*, the attorney received a retainer from one client but subsequently failed to respond to emails and phone calls from both clients and prosecutors, resulting in a full voicemail box. 838 N.W.2d at 537–38. The attorney in *Nelson* further failed to notify his clients about pending court dates and the attorney ultimately abandoned his office. *Id.* at 538. The court held the attorney violated rule 32:1.4 numerous times in representations of multiple clients. *Id.*

The facts of the present case are similar to *Nelson*. After receiving a retainer from the client, Ryan, in a November 9, 2011 letter, led the

client to believe she would be following up with opposing counsel. Ryan, however, did not follow up with opposing counsel and ultimately disappeared from the client's matter without informing the client. Ryan did not attempt to inform her client about the status of the client's case or Ryan's representation.

Ryan's actions demonstrate she failed to keep her client informed about the status of the matter and failed to respond to the client's multiple phone calls and visits. Therefore, the Board has proven by a convincing preponderance of the evidence that Ryan violated rule 32:1.4(a)(3) and (4).

### D. Rule 32:1.16(d) (Declining or Terminating Representation).

Rule 32:1.16(d) states that

> [u]pon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled, and refunding any advance payment of fee or expense that has not been earned or incurred.

Iowa R. Prof'l Conduct 32:1.16(d).

We have previously disciplined attorneys who failed to properly terminate their attorney–client relationships. *See, e.g.*, *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Cunningham*, 812 N.W.2d 541, 547–48 (Iowa 2012); *Johnson*, 792 N.W.2d at 678. In *Cunningham*, an attorney representing a client in a divorce action failed to respond to discovery requests or notify the client of a scheduled hearing. 812 N.W.2d at 547– 48. As a result, the court granted the opposing party's motion to compel and ordered a $500 sanction. *Id.* at 545. The client also attempted to contact the attorney multiple times but the attorney never responded to the client's calls. *Id.* at 547. Eventually, the attorney's law partner filed

a motion to withdraw on the attorney's behalf. *Id.* However, the attorney did not take any steps to safeguard the client's interests or return the client's file. *Id.* at 547–48. The court held these actions violated rule 32:1.16(d). *Id.* at 548; *see also Johnson*, 792 N.W.2d at 678 (noting attorney's failure to provide notice of termination, contact information, or return paperwork to client upon termination of the attorney–client relationship violated rule 32:1.16(d)).

In the present case, Ryan informed the client—in a November 9, 2011 letter—of her intent to follow up with opposing counsel. Ryan failed to follow up and discontinued the representation without informing the client. Ryan also did not return the client's file or refund any unearned fees. Like in *Cunningham*, Ryan failed to withdraw from the case, safeguard the client's interests, or return the client's files. *See Cunningham*, 812 N.W.2d at 547–48. Therefore, the Board has proven by a convincing preponderance of the evidence that Ryan violated rule 32:1.16(d).

**E. Rule 32:1.15(f) (Safekeeping Property).** Rule 32:1.15(f) states, "All client trust accounts shall be governed by chapter 45 of the Iowa Court Rules." Iowa R. Prof'l Conduct 32:1.15(f). Iowa Court Rule 45.7(4) requires that

> [a] lawyer accepting advance fee or expense payments must notify the client in writing of the time, amount, and purpose of any withdrawal of the fee or expense, together with a complete accounting. The attorney must transmit such notice no later than the date of the withdrawal.

Correspondingly, rule 45.7(5) requires the refunding of unearned advance fees.[1]

---

[1]In her closing argument, the Board's attorney noted that regarding the safekeeping-of-property charge (rule 32:1.15(f)), the only chapter 45 rule that applied in

In *Iowa Supreme Court Attorney Disciplinary Board v. Baldwin*, the attorney "prematurely withdrew funds from the trust account that he had not yet earned" in a criminal case. 857 N.W.2d 195, 211 (Iowa 2014). The attorney also withdrew $218 in unearned fees from a client's trust account in a separate action. *Id.* The court held the attorney violated rule 32:1.15(f), and Iowa Court Rule 45.7(4), among other rules, explaining:

> [These rules] generally set forth the details a lawyer needs to know and follow when administering his or her trust accounts. These rules generally require a lawyer to place client funds into a separate subaccount, withdraw payment from the trust account only once the fee is earned, notify the client when the attorney anticipates making a fee withdrawal, and provide the client a complete accounting of any such withdrawal. The attorney must also transmit the notice of such withdrawal and accounting no later than the date of withdrawal.

*Id.* at 210–11 (internal quotation marks omitted).

In the present case, Ryan's billing statements did not provide any information regarding the amount of time spent on any task performed or Ryan's hourly rate. Furthermore, the accountings provided in the statements were inaccurate, and the interim statements listed incorrect amounts as to the balance of the retainer. Finally, Ryan failed to refund $401.56 of unearned remaining money in the client's trust account, and as a result, the client was reimbursed with funds from the client security trust fund.[2] *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. McCuskey,*

---

this case was rule 45.7(5) ("Notwithstanding any contrary agreement between the lawyer and client, advance fee and expense payments are refundable to the client if the fee is not earned or the expense is not incurred."). She further noted that this rule, and rule 32:1.16(d) involving declining or terminating representation, "are pretty much one in the same. The fact pattern is the same in this situation."

[2]We note the Client Security Commission only pays "claims resulting from the dishonest conduct of a member of the bar of this state acting either as an attorney or fiduciary." Iowa Ct. R. 39.9(1); *see also id.* r. 40.1 (defining "dishonest conduct" as

814 N.W.2d 250, 256 (Iowa 2012) (finding attorney violated rule 45.7(4) and rule 45.7(5) by accepting funds from the client on three different occasions and failing to provide the client "with an accounting or . . . return unearned fees"). Both in *Baldwin* and in the present case, the attorney withdrew unearned funds from the client's trust account and failed to provide appropriate accounting.

Although we find Ryan failed to notify Ms. Huffman regarding withdrawals from her client trust account, failed to provide an accurate and complete accounting regarding the balance of her retainer, and failed to refund unearned money, we do not believe there is a basis for concluding that Ryan's conduct amounts to conversion or misappropriation. In its complaint, the Board alleged a violation of rule 32:1.15(f). The Board never expressly alleged Ryan stole or intentionally misappropriated funds. Complaints filed by the Board must be "sufficiently clear and specific in their charges to reasonably inform the attorney against whom the complaint is made of the misconduct alleged to have been committed." Iowa Ct. R. 35.5. "Because attorney disciplinary actions are 'quasi-criminal' in nature, 'the charge[s] must be known before the proceedings commence.'" *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Kelsen*, 855 N.W.2d 175, 183 n.3 (Iowa 2014) (alteration in original) (quoting *In re Ruffalo*, 390 U.S. 544, 551, 88 S. Ct. 1222, 1226, 20 L. Ed. 2d 117, 122 (1968)); *see Iowa Supreme Ct. Att'y Disciplinary Bd. v. Cepican*, 861 N.W.2d 841, 844 (Iowa 2015) (noting the

"wrongful acts committed by a lawyer against a person in the manner of defalcation or embezzlement of money, or the wrongful taking or conversion of money, property, or other things of value"). However, our rules make clear that payment to a claimant under this provision does not amount to a finding of misappropriation or conversion in a disciplinary proceeding. *See id.* r. 39.9(8) ("The payment . . . of any claim filed under [the rule] shall be inadmissible as evidence in any disciplinary . . . proceeding."). Additionally, we note we have never revoked an attorney's license based solely on a payment to a claimant from the client security trust fund.

"charges must be known to the attorney before the hearing begins[,] [as] [t]he notice requirement is a basic component of procedural due process").

We find this case is more like *Iowa Supreme Court Attorney Disciplinary Board v. Cross*, than *Kelsen*. *Compare Cross*, 861 N.W.2d 211, 213 (Iowa 2015), *with Kelsen*, 855 N.W.2d at 175. In *Kelsen,* we revoked an attorney's license for converting $7500 worth of client funds without a colorable future claim to those funds despite the Board's failure to allege that specific misconduct in its complaint. 855 N.W.2d at 183 n.3, 185. Specifically, we noted that "the Board's complaint did not expressly allege [the attorney] had misappropriated client funds." *Id.* at 183 n.3. However, it did "clearly cover [the attorney's] handling and misuse of [a specific client's] $7500." *Id.* The complaint in *Kelsen* alleged the attorney failed to deposit the client's $7500 check in his trust account, had spent the money before the client asked for it back approximately a week later, and therefore had violated rule 32:1.15. *Id.* In determining revocation was the appropriate sanction, instead of the public reprimand that was recommended by the commission, we concluded "[the Board's] allegations were sufficient to put [the attorney] on notice that the Board believed [he] had not safeguarded his client's $7500 as required by rule 32:1.15." *Id.* We further noted that the attorney clearly "understood the centrality of the colorable claim question" because "[m]uch of his testimony . . . was devoted to trying to establish a colorable claim defense." *Id.*

In *Cross*, although the Board alleged a violation of rule 32:1.15, it never alleged Cross stole or otherwise misappropriated money from his client. 861 N.W.2d at 219–20 & n.3. Additionally, we noted "no clients [were] known to have filed a complaint against Cross[,]" "the Board did

not suggest that Cross misappropriated any client funds at the hearing before the commission[,]" and "the commission ha[d] not suggested that revocation [was] the appropriate sanction." *Id.* at 220 n.3. We found "Cross was never put on notice that he faced sanctions for misappropriating any client funds" and therefore we did "not consider whether Cross misappropriated client funds." *Id.*; *see also Cepican*, 861 N.W.2d at 844 (declining to determine if attorney committed theft, as the complaint failed to "provide adequate notice to [the attorney] of the charge of theft, and this lack of notice denied him a reasonable opportunity to defend against the claim and the sanction of revocation").

Here, like in *Cross*, the Board never alleged Ryan stole or misappropriated client funds in its complaint. Additionally, at the hearing, the Board never stated the misconduct involved conversion or misappropriation. *Cf. Kelsen*, 855 N.W.2d at 182–83 (noting at the hearing the Board took the position that the matter "involved 'conversion' and 'misappropriation' and 'should be treated quite seriously'" and additionally, in its statement regarding sanction, recommended a harsher sanction than reprimand (that recommended by the commission), as "the actions of [the attorney] are considered misappropriation and conversion under the decisions of this Court"). We therefore find Ryan, like the attorney in *Cross*, was never put on notice that she faced sanctions for misappropriating client funds. *See Cross*, 861 N.W.2d at 219–20 n.3. Further, the commission has not suggested that revocation is the appropriate sanction in this case. *See id.* (noting same).

Additionally, the record shows the balance of the retainer in Ryan's trust account regarding Ms. Huffman's matter is $431.06, based on both the January and April 2011 interim statements. There was no allegation

that Ryan removed these funds or otherwise used the remainder for personal or other unauthorized uses. *Cf. Kelsen,* 855 N.W.2d at 185–86 (holding revocation was appropriate sanction when record showed attorney converted $7500 of client funds to personal use without a colorable future claim to the funds); *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Leon,* 602 N.W.2d 336, 338–39 (Iowa 1999) (holding repeated misappropriation of trust funds to cover-up neglect in several clients' cases warranted revocation); *Comm. on Prof'l Ethics & Conduct v. Ottesen,* 525 N.W.2d 865, 866 (Iowa 1994) (imposing revocation when routine audit revealed attorney's conversion of at least $7334 in client funds to his own use). In sum, we will not consider whether Ryan misappropriated client funds on the record before us.

Therefore, based on a de novo review of the record before us, we find the Board has alleged and proven by a convincing preponderance of the evidence that Ryan violated rule 32:1.15(f) and Iowa Court Rules 45.7(4) and 45.7(5).

**F. Rule 32:1.5(b) (Scope of Representation and Fees).** Rule 32:1.5(b) states,

> The scope of the representation and the basis or rate of the fee and expenses for which the client will be responsible shall be communicated to the client, preferably in writing, before or within a reasonable time after commencing the representation.

Iowa R. Prof'l Conduct 32:1.5(b).

In *Nelson,* the attorney failed to enter into fee agreements with two clients and failed to communicate the fee arrangements with the clients. 838 N.W.2d at 538. The attorney also claimed that even though he did not enter into an agreement or respond to the clients, he "did inform the

clients prior to retention of how the funds would be disbursed." *Id.* The court held the attorney's actions violated rule 32:1.5(b). *Id.*

In the present case, Ryan did not provide the client with a written fee agreement or contract. Ms. Huffman also did not know how much Ryan would charge per hour nor did she have a clear understanding of how Ryan's fees would be determined. Ryan's interim statements also illustrate the confusion. The interim statements do not account for the specific time spent on the case nor do they state an hourly fee. Even when Ms. Huffman sought an explanation of the fees, Ryan did not provide any clarification regarding the fees or statements.

Like in *Nelson,* Ryan failed to enter into an agreement and failed to explain the fee arrangement to her client. *See Nelson,* 838 N.W.2d at 538. Ryan also failed to respond to the client's fee inquiries. Because Ryan failed to communicate the scope of representation and the rate or basis of the fees to her client, she violated rule 32:1.5(b).

**IV. Sanctions.**

**A. General Framework.** "There is no standard sanction for a particular type of misconduct, and though prior cases can be instructive, we ultimately determine an appropriate sanction based on the particular circumstances of each case." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Earley,* 729 N.W.2d 437, 443 (Iowa 2007); *see also Iowa Supreme Ct. Att'y Disciplinary Bd. v. Morrison,* 727 N.W.2d 115, 119 (Iowa 2007) ("We give the discipline recommended by the Grievance Commission its due respect although the matter of sanction is solely within the authority of this court." (Internal quotation marks omitted.)). In determining the appropriate sanction, we consider:

> "[T]he nature of the violations, the attorney's fitness to continue in the practice of law, the protection of society from those unfit to practice law, the need to uphold public

confidence in the justice system, deterrence, maintenance of the reputation of the bar as a whole, and any aggravating or mitigating circumstances."

*Van Ginkel*, 809 N.W.2d at 108 (quoting *Ireland*, 748 N.W.2d at 502).  We have noted the "primary goal of attorney discipline is to protect the public, not to punish the attorney."  *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Barnhill*, 847 N.W.2d 466, 487 (Iowa 2014).

**B. Sanctions in Similar Cases.**  In *Cunningham*, an attorney representing a client in a divorce action failed to respond to discovery requests or notify the client of a scheduled hearing.  812 N.W.2d at 547.  As a result, the court granted the opposing party's motion to compel and ordered a $500 sanction.  *Id.*  The client also attempted to contact the attorney multiple times but the attorney never responded to the client's calls.  *Id.*  Eventually, the attorney's law partner filed a motion to withdraw on the attorney's behalf.  *Id.*  However, the attorney did not take any steps to safeguard the client's interests or return the client's file.  *Id.*  In determining rule violations, the court held the attorney violated multiple rules, including failing to keep a client reasonably informed, failing to promptly and diligently represent a client, and failing to safeguard a client's interest upon his withdrawal.  *Id.* at 547–49.  Regarding a second client, the court found the attorney, among other violations, failed to take steps to safeguard a client's interest when he stopped representing a client and failed to return a client's filing fee.  *Id.* at 549.  In determining sanctions, the court held an eighteen-month suspension was appropriate when the attorney failed to turn over his clients' files, neglected clients' requests, and made misrepresentations to his clients.  *Id.* at 553.  The court also held the attorney's failure to cooperate with the board, multiple instances of neglect, and previous ethical violations were aggravating factors.  *Id.*

In *Iowa Supreme Court Attorney Disciplinary Board v. Hauser*, the attorney received a $1000 retainer to represent a client in a dissolution-of-marriage action. 782 N.W.2d 147, 150 (Iowa 2010). While the attorney did file a competent answer and attended a mediation session with the client, the attorney disappeared thereafter and failed to return numerous phone calls from the client. *Id.* As a result, the client was forced to employ another attorney. *Id.* The court held the attorney

> neglected his client's dissolution case, failed to keep his client informed, failed to properly safeguard and appropriately withdraw his client's funds, failed to appropriately withdraw from representation, failed to properly maintain trust account records, failed to provide an accurate accounting to his client and to return unearned fees to his client, and failed to respond to the board's inquires.

*Id.* at 152–53. Furthermore, the court held that a six-month suspension was appropriate noting, "abandonment of his client, his prior extensive history of ethical infractions, and his failure to timely and appropriately respond to the board's inquiries, combined with his trust account violations, warrants the imposition of a more serious sanction." *Id.* at 154. Finally, the court noted the attorney's steps to address his alcoholism were a mitigating factor. *Id.*

**C. Mitigating and Aggravating Factors in this Case.** We now turn to consider aggravating and mitigating factors in this case. There are aggravating features. Ryan failed to cooperate with the proceedings of the judicial branch commissions on two occasions. *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Hearity*, 812 N.W.2d 614, 622 (Iowa 2012) (finding failure to cooperate "a significant aggravating factor"); *see also Cunningham*, 812 N.W.2d at 551 (noting "[f]ailure to respond to and cooperate with the Board's investigation is . . . an aggravating factor"). She failed to respond to the inquiries of the Client Security Commission

in 2012, leading to a temporary suspension of her license. She then failed to respond to Ms. Huffman's complaint filed with the Board. Ryan's double-barreled lack of cooperation is an aggravating factor in this case.

Another aggravating factor is the extreme vulnerability of the client in the representation undertaken by Ryan. *See Moothart*, 860 N.W.2d at 617 (noting vulnerability of victims as aggravating factor). The matter involved child custody. Ms. Huffman was emotionally distraught over the possibility her daughter's father might be released from prison and assert custodial rights. She sought a lawyer's help during an extremely emotional time. She was not a person of means, but scraped together the $1000 retainer to protect, what was for her, the most important relationship in her life. She was entitled to the steady, guiding hand of competent counsel to help her navigate through unfamiliar legal waters on this most important matter. Instead, Ryan, after initially undertaking the representation and apparently performing some work, simply quit working for her and, for all intents and purposes, disappeared. The client's anxiety arising from being abandoned by her lawyer is reflected in a telephone log that shows she called Ryan's office no less than twenty-five times in an attempt to reach Ryan. No client should be put through this kind of emotional ringer. Ryan's abandonment of her client is simply inexcusable.

The record is devoid of any evidence regarding mitigating factors. Although Ryan apparently participated in a scheduling conference, in which there was some reference to appointments at Mayo Clinic and an illness affecting her brain, Ryan did not appear at the hearing. There is no doubt a story of some kind behind her unacceptable behavior. Given the lack of record, however, one can only speculate regarding what was

going through her mind and whether there were health issues or other extenuating circumstances. *Cf. Iowa Supreme Ct. Att'y Disciplinary Bd. v. Wagner*, 768 N.W.2d 279, 288 (Iowa 2009) (per curiam) (noting there was nothing for the court to consider as "no mitigating circumstances by way of explanation or excuse [were] provided"). We are not clairvoyant, however, and Ryan chose not to make any record. We cannot make a record for her. We therefore find no mitigating circumstances.

**D. Sanction in this Case.** We now consider the appropriate sanction in this case. In *Cunningham*, the attorney violated multiple ethical rules with multiple clients. 812 N.W.2d at 547. Ryan, however, only violated ethical rules with one client. Furthermore, Cunningham had a previous record of past disciplinary actions, *id.* at 551, while Ryan does not. Thus, the sanction in this case should be less than the eighteen-month suspension imposed in *Cunningham. See id.* at 553.

The facts of the present case are in some respects closely aligned with the facts of *Hauser*. In both cases, the attorneys received a $1000 retainer from their respective clients in a family law context. *See Hauser*, 782 N.W.2d at 150. Furthermore, in both cases, the attorneys initiated the action, disappeared while the matter was pending, and failed to fully cooperate with the board. *See id.* While Hauser had a lengthy history of previous discipline, including three public reprimands and five suspensions, he also admitted his alcoholism and had begun attending AA meetings. *Id.* at 150, 154.

Based on our evaluation of the violations and the presence of aggravating factors, we conclude Ryan must face a significant suspension of her license to practice law. Ryan's license to practice law in Iowa should be suspended for an indefinite period of time with no

possibility of reinstatement for six months as discipline for the ethical infractions proved in this case.

In considering the disciplinary suspension issue, we must further consider the impact of Ryan's previous temporary suspensions. We considered the effect of a temporary suspension of an attorney's license for failure to answer the Board's inquiry after discipline had been imposed in *Cunningham.* In *Cunningham,* we held that the conclusion of the disciplinary action meant there was no longer a need for a prompt response to the Board's inquiries and, as a result, the temporary suspension was dismissed. 812 N.W.2d at 553–54. We take the same approach here.

The temporary suspension for failure to respond to auditors from the Client Security Commission raises a different issue. The reason for the temporary suspension was to prevent further potential client security problems and to promote the auditors' access to Ryan's books and records. The concerns underlying this temporary suspension remain unabated. Under the circumstances, we think the best approach is to mirror the terms of the temporary suspension order with the disciplinary suspension in this case. In other words, as a condition of reinstatement, Ryan must show that the Client Security Commission has been provided access to her books and records and any audit desired by the Client Security Commission has been completed. *Cf. Iowa Supreme Ct. Att'y Disciplinary Bd. v. Wright,* 857 N.W.2d 510, 518 (Iowa 2014). Our decision today is without prejudice to any further disciplinary action that may arise after the completion of the required audit.

We also agree with the commission's recommendation that before Ryan's license is reinstated, she must reimburse the client security trust fund the sum of $431.06. Although there was inconsistency in the

documentation presented to the commission, there is no dispute that this is the amount actually paid by the client security trust fund to Ms. Huffman to cover Ryan's failure to reimburse her for unearned fees.[3]

We decline, however, to require that Ryan provide an explanation of her past misconduct. It is too late for that. Ryan did not present a defense in this proceeding, and as a result, we have imposed sanctions for her proven misconduct based on a record that contains no evidence of mitigating factors. Any explanations at this point would be only academic.

We also decline to require *in-person* CLE in addition to the normal CLE requirements attendant to the practice of law in Iowa. Although we have declined to adopt the commission's recommendation of CLE completion as a condition of reinstatement in some cases, *see, e.g.*, *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Hedgecoth*, 862 N.W.2d 354, 360 (Iowa 2015) (declining to require "ten mandatory hours of CLE in the areas of ethics and law office management," as the attorney's "voluntary commitment to refrain from representing client's on appeal . . . provide[d] adequate assurance against recurrence of the [improper conduct]"); *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Lickiss,* 786 N.W.2d 860, 871 (Iowa 2010) (rejecting commission's recommendation that an attorney complete "appropriate continuing legal education" when attorney testified he did not intend to engage in a specific practice area in the future and had, in

---

[3]Based on the January and April 2011 interim statements provided to Ms. Huffman and admitted into evidence at the hearing, our calculations reveal the actual amount left in Ryan's client security trust account regarding Ms. Huffman's matter is $401.56 ($1000 - $383.94 (January statement) - $214.50 (April statement)). However, it is undisputed that the client security trust fund reimbursed Ms. Huffman $431.06 and that is the amount we require Ryan to reimburse the client security trust fund prior to being reinstated.

fact, abandoned law practice), we believe proof of completion of two hours of ethics CLE and two hours of trust account CLE before Ryan is reinstated is appropriate in this case, *cf. Iowa Supreme Ct. Att'y Disciplinary Bd. v. Parrish*, 801 N.W.2d 580, 590 (Iowa 2011) (suspending attorney's license for sixty days for misconduct in connection with attorney's handling of his trust account for two clients and requiring attorney to attend "continuing education with respect to billing, timekeeping practices, and client trust accounts, and to submit proof of his attendance to the court prior to reinstatement").

### V. Conclusion.

For the above reasons, we suspend Ryan's license to practice law in this state for an indefinite period of time with no possibility of reinstatement for six months. The suspension shall apply to all facets of the practice of law. *See* Iowa Ct. R. 35.13. Ryan shall provide all of the notifications required by Iowa Court Rule 35.23. On application for reinstatement, Ryan shall have the burden of proving she has not practiced during the period of suspension and she meets all the requirements of Iowa Court Rule 35.14. The costs of this proceeding are taxed against Ryan pursuant to Iowa Court Rule 35.27(1).

**LICENSE SUSPENDED.**

All justices concur except Wiggins, J., who dissents.

#15–0147, *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Ryan*

**WIGGINS, Justice (dissenting).**

The record clearly establishes the Client Security Commission paid $431.06 to Vicki Ryan's client JoLynn Huffman; which is the amount Ryan's documents stated remained in her trust account after she worked on Ms. Huffman's matter. The commission only pays "claims resulting from the dishonest conduct of a member of the bar of this state acting either as an attorney or fiduciary." Iowa Ct. R. 39.9(1). The rules define "dishonest conduct" as "wrongful acts committed by a lawyer against a person in the manner of defalcation or embezzlement of money, or the wrongful taking or conversion of money, property or other things of value." *Id. r.* 40.1.

Evidence of the payment by the commission is not admissible in a disciplinary proceeding. *Id. r.* 39.9(8). However, the commission admitted the evidence of the payment without objection. When the commission admits evidence without objection, the commission can use the evidence to establish a material fact. *See IBP, Inc. v. Burress*, 779 N.W.2d 210, 220 (Iowa 2010) (holding evidence admitted into the record without objection may be used to establish any material fact); *Holmquist v. Volkswagen of Am., Inc.*, 261 N.W.2d 516, 523 (Iowa Ct. App. 1977) (same). Thus, the record establishes by a convincing preponderance of the evidence Ryan converted Ms. Huffman's money and did not have a colorable future claim to this money.

The majority claims the Board did not give Ryan sufficient notice her license could be revoked. I disagree. The complaint raised trust account violations and asked the commission to "recommend that the Supreme Court of Iowa take the necessary and appropriate disciplinary action." The Code gives attorneys notice that we can revoke or suspend

the license of an attorney for "[d]oing any other act to which such a consequence is by law attached." Iowa Code § 602.10122(4) (2013). The consequence of converting client funds is revocation of the attorney's license regardless of the amount of funds the attorney converts. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Thomas*, 844 N.W.2d 111, 117 (Iowa 2014).

The United States Supreme Court has stated procedural due process in an attorney disciplinary case only requires the attorney to have knowledge of the charge before the proceedings commence. *In re Ruffalo*, 390 U.S. 544, 551, 88 S. Ct. 1222, 1226, 20 L. Ed. 2d 117, 122 (1968). Here, the Board gave Ryan notice of the trust account violations and the Code gave her notice of the penalties associated with her alleged violations prior to the commencement of the proceedings. Consequently, I would revoke Ryan's license to practice law.

It appears to me the majority is resorting to unnecessary procedural technicalities to protect attorneys from receiving the appropriate discipline. Would the majority reach the same result in a criminal case when the trial information gave notice of the charges and defendant's only notice of the punishment was in the Code? I think not.

In the future, I urge the Board to put in every complaint in which the Board alleges a trust account violation that if the court finds the trust account violation amounts to conversion, the court can revoke the attorney's license. I would also urge the Board to put in the complaint that if the evidence establishes funds are missing from an attorney's trust account, the burden shifts to the attorney to come forward with evidence to establish a colorable future claim to those funds to avoid revocation of the attorney's license. *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Carter*, 847 N.W.2d 228, 232–33 (Iowa 2014) ("[A]n

attorney in a disciplinary proceeding bears the burden of coming forward with evidence of a colorable future claim, but the burden to prove conversion remains with the Board.").